**STATE of Minnesota, Respondent,**

v.

**Stephen Carl SCHMIT, Jr., Appellant.**

**No. 82–595.**

Supreme Court of Minnesota.

Jan. 28, 1983.

C. Paul Jones, Public Defender, and Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, R. Scott Hill, County Atty., Faribault, for respondent.

AMDAHL, Chief Justice.

This is an appeal by a criminal defendant, pursuant to Minn.Stat. § 244.11 (1982), from a durational sentencing departure.

Defendant was charged by indictment with first-degree murder in the shooting death of his wife, but a district court jury found him guilty only of first-degree heat-of-passion manslaughter. The presumptive sentence for this offense (severity level VIII) by a person with defendant's criminal history score (zero) normally would be 43 (41–45) months in prison. However, because a firearm was used, the presumptive sentence was 54 months in prison pursuant to Minn.Stat. § 609.11, subd. 5 (1982), and Minnesota Sentencing Guidelines and Commentary II.E. (1982). The sentencing court imposed a sentence of 180 months (15 years), the maximum permitted by statute for the offense of which defendant was convicted. We reduce defendant's sentence to 108 months, which is two times the presumptive sentence duration.

The record on appeal does not include the transcript of the trial, but does include a tape and transcript of the defendant's confession and a copy of the omnibus hearing transcript. It appears that defendant's wife, who was 25, was released from prison on May 5, 1981, after serving time for forgery. On May 8 defendant tried to persuade her parole agent to send her back to prison because of problems he was experiencing with her. Defendant admittedly had entertained thoughts of killing her in the past. On the evening of June 7 he had a long argument with her, which he claimed she insisted on having. After she went to bed, he lay in bed and thought about killing her. At 5:45 a.m. on the 8th, while she lay asleep, he shot her at close range with a .22 caliber revolver, killing her. He then covered the body and let it remain in bed all day. Late that night he put it in the trunk of his car, drove to an area near some railroad tracks, and disposed of it. What little remained of it was discovered around July 20. Positive identification was made on July 30.

Defendant was interrogated and confessed on August 1.

The first factor relied upon by the sentencing court as a ground for the durational departure was the court's conclusion, notwithstanding the verdict, that the evidence of premeditation was overwhelming and that therefore defendant deserved greater punishment than the typical defendant convicted of first-degree heat-of-passion manslaughter. In a number of cases we have indicated that generally it is proper for the sentencing court to consider the conduct underlying the charge of which the defendant was convicted. *See, e.g., State v. Rott*, 313 N.W.2d 574 (Minn.1981); *State v. McClay*, 310 N.W.2d 683 (Minn.1981); *State v. Garcia*, 302 N.W.2d 643 (Minn.1981). However, in *State v. Womack*, 319 N.W.2d 17 (Minn.1982), we recognized an exception to the general rule. In *Womack* the defendant was charged with being a felon in possession of a pistol and with assault in the second degree (assault with a dangerous weapon). The defendant pleaded guilty to the possession charge on the understanding that the assault charge would be dismissed, but in sentencing the defendant the court based a durational departure on its belief that the defendant had committed the assault. We held that this was improper and reduced the defendant's sentence to the presumptive sentence length, stating:

Notwithstanding [*Garcia* and related cases], we believe that it was error in this case for the trial court to rely on the overall course of conduct as justification for aggravating defendant's sentence for the possession charge. Defendant admitted that he violated the law in possessing the gun but at all times he has claimed that he used it against the complainant only in self-defense, first in striking her when she attacked him with the knife, later to fire in the air and frighten her in an attempt to stop her from attacking him as he attempted to drive away. Defendant had a right to have a jury determine his guilt or innocence of that charge. He gave up that right only on condition that the charge would be dismissed in exchange for his guilty plea to the possession charge. It is one thing for the sentencing court to look at the conduct underlying the offense to which the defendant plead guilty if the defendant admits that the underlying conduct occurred, but it is quite another thing when the defendant denies that such conduct occurred. In this case the defendant at all times has claimed that he acted in self-defense. Stated differently, although defendant obtained a dismissal of the assault charge in exchange for his guilty plea and although he has never admitted his guilt of the assault charge, he received a term of 30 months, which is the duration of the term which would have been presumptively appropriate if he had been convicted of the assault by a jury.

The state's response is that as a matter of law defendant did not act in self-defense. However, upon analysis it becomes apparent that the state is really arguing that *as a matter of fact* defendant did not act in self-defense. Given the way in which the case was presented to the trial court, the trial court was not entitled to act as factfinder and determine whether defendant was telling the truth when he claimed that the complainant attacked him with a knife. That being so, we believe that the departure, based on the sentencing court's factfinding, was improper.

319 N.W.2d at 19–20.

In this case there was evidence of premeditation, but the jury did not find defendant guilty either of first-degree murder or any lesser degree of murder but instead found him guilty only of first-degree heat-of-passion manslaughter. The trial court appears to have based the departure in part upon its personal conclusion that defendant committed premeditated murder. If this is so, it was improper. However, the trial court could rely on the fact that defendant apparently never denied that in the past he had entertained thoughts of killing the victim. The jury verdict is not necessarily inconsistent with statements by defendant to this effect. The jury possibly found that

although defendant had thought about killing the victim in the past, the plan to kill her on the night in question was concocted while he was in the heat of passion and therefore defendant was guilty only of heat-of-passion manslaughter. It is at least arguable that it is worse to kill a person while in the heat of passion where one has contemplated doing it in the past than it is to kill while in heat of passion without ever having thought about it before.

We also believe that the act was more serious than the "typical" act of heat-of-passion manslaughter in that there apparently was a period of time separating the events that gave rise to defendant's passion and the actual act of shooting the victim. Specifically, the victim apparently trusted defendant enough that she went to sleep in his presence and it was while she was asleep that defendant killed her.[1]

We conclude that the act of heat-of-passion manslaughter by defendant was sufficiently aggravating and serious to justify harsher punishment than that provided by the presumptive sentence for the typical offense of heat-of-passion manslaughter by one with defendant's criminal history score. We do not agree with the sentencing court that this is one of the extremely rare cases in which more than a double durational departure is justified. *See, e.g., State v. Norton,* 328 N.W.2d 142 (Minn.1982); *State v. Stumm,* 312 N.W.2d 248 (Minn.1981). Accordingly, we reduce defendant's sentence to 108 months, two times the presumptive sentence duration.

Affirmed as modified.

---

**1.** Although defendant concedes that the victim was particularly vulnerable in the sense that she was asleep, we need not and do not decide that point.

In justifying its departure in sentencing, the trial court relied, in part, upon the manner in which defendant disposed of the victim's body. Because defendant made no effort to bargain with information concerning the location of the body, his concealment of the body does not operate as an aggravating factor in sentencing. *See State v. Shiue,* 326 N.W.2d 648 (Minn. 1982). Other factors relied upon by the trial court, including defendant's apparent lack of remorse and the trial court's belief that a stiffer sentence was needed to deter defendant and others from committing such a crime, are not factors justifying aggravation of the sentence.