**STATE of Minnesota, Respondent,**

v.

**Randy ANDERSON, Appellant.**

**No. C3–90–253.**

Court of Appeals of Minnesota.

Dec. 4, 1990.

Review Denied Jan. 14, 1991.

John M. Stuart, State Public Defender, Susan L.-P. Hauge, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted County Atty., Rochester, for respondent.

Considered and decided by HUSPENI, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

HUSPENI, Judge.

Appellant alleges that imposition of a double durational departure and consecutive sentences based on his conviction for first and second degree assault was an abuse of discretion and effectively negated the jury's verdict. Appellant also alleges that the trial court erred in not granting him a downward departure. We affirm.

## FACTS

Appellant, Randy Anderson, worked as a security guard and had obtained a permit to carry a weapon while working. On the night of June 13, 1989, appellant and his fiancee entertained another couple and their child. When the couple left at about 10:00 p.m., appellant left with them, saying he had to go to work for an hour. In fact, he did not have to go to work; however, he took his weapon with him. He went to a local pool hall and bar which he frequented several times a week. Shortly after appellant arrived at the pool hall, two teenagers arrived looking for him, as they knew he frequented the pool hall. They apparently sought him out because he worked as a security guard.

The girlfriend of one of the teenagers had reported over her CB radio that she was being followed by some Asians with a gun. One of the teenagers was organizing a posse or "calling out the cavalry" via the CB radio to track down the Asians and sought out appellant to assist in confronting them. Appellant joined the group of eight or more teenagers which proceeded to a house next to a local gas station. A car had been located there which was thought to belong to the Asians reportedly carrying the gun.

Two Asians were confronted regarding the car. Several others were in the vicinity or came out of the house during the incident. Some epithets were exchanged and someone yelled out that someone had a gun.[1] Most of the teenagers immediately fled to their cars and left. Appellant headed for some bushes, then fired 13 shots in rapid succession, hitting two Asians who had come out of the house during these events. As a result of the shooting, one of the victims lost a kidney and part of his large intestine. The other victim was shot in the leg but was not seriously injured.

Appellant was convicted of first degree assault as to one victim and second degree assault as to the other. The first degree assault sentence of 43 months was doubled. The sentence for second degree assault

---

1. The evidence indicates that appellant was the only person carrying a gun.

was the 36 month minimum sentence for an offense involving a firearm. The sentences were to run consecutively.

### ISSUES

1. Did the trial court abuse its discretion in making an upward durational departure from the presumptive sentence?

2. Did the trial court err in imposing consecutive sentences where there were multiple victims?

3. Did the trial court err in denying a downward dispositional departure from the presumptive sentence?

### ANALYSIS

The standard of review of sentencing departures is whether the trial court committed an abuse of discretion. *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981).

### I.

■ Appellant argues that the trial court abused its discretion in doubling the sentence for first degree assault.

The purpose of the sentencing guidelines is to establish rational and consistent standards which reduce sentencing disparity and ensure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history.

Minn. Sent. Guidelines and Commentary, I.

Since the sentencing guidelines became effective, there has been a continuous stream of sentencing departures presented to the courts for review. The number of affirmances in these cases may be viewed as an ever increasing willingness by the appellate courts of Minnesota to accept substantial and significant upward departures.

■ In order to depart durationally, the trial court must decide whether a "defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984). If defendant's conduct is more seri-

ous, a court may depart from the presumptive sentence "only when substantial and compelling circumstances exist." Minn. Sent. Guidelines I.4. The supreme court has established a general rule for sentencing departures as follows:

> *[G]enerally* in a case in which an upward departure in sentence length is justified, the *upper limit* will be double the presumptive sentence length.

*State v. Evans*, 311 N.W.2d 481, 483 (Minn. 1981) (emphasis added).

This case involves both first and second degree assault. First degree assault is one which "inflicts great bodily harm." Minn. Stat. § 609.221 (1988). Second degree assault is an assault "with a dangerous weapon." Minn.Stat. § 609.222 (1988). Appellant shot a gun 13 times in a mixed residential and commercial area. There were at least six people in the immediate area and two of them were injured; one person seriously and permanently. Because of the large number of people in the area and the number of shots fired, we find no abuse of discretion in the trial court's determination that appellant's conduct was "particularly serious and represented a greater than normal danger to the safety of other people." *State v. McClay*, 310 N.W.2d 683, 685 (Minn.1981). In addition, serious and permanent injury such as suffered by one of the victims here has been found sufficient to support a durational departure. *See State v. Van Gorden*, 326 N.W.2d 633, 634–35 (Minn.1982).

In finding no abuse of discretion by the trial court in this doubling of the presumptive sentence, we reemphasize the standard set out by the supreme court in *Evans*, that double the presumptive sentence is generally intended to be an upper limit and that:

> we do not intend to suggest that trial courts should automatically double the presumptive length in all cases in which upward departure is justified nor do we suggest that we will automatically approve all departures of this magnitude.

*Id.*, 311 N.W.2d at 483.

### II.

■ Minnesota Statutes § 609.035 (1988) bars multiple sentencing for the same be-

havioral incident except where there are multiple victims.

> Under the multiple-victim exception to the rule of Minn.Stat. § 609.035 (1980) * * *, the trial court may impose one sentence per victim in multiple victim cases so long as the multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct.

*State v. Montalvo*, 324 N.W.2d 650, 652 (Minn.1982).

Appellant argues that imposition of consecutive sentences was an abuse of discretion because it exaggerates the criminality of appellant's conduct.[2] We do not agree. In a case involving second degree manslaughter and aggravated assault, the Minnesota Supreme Court stated:

> In a number of cases, * * * we have upheld multiple sentences for multiple crimes arising from the same behavioral incident when there were multiple victims to the crimes. *See, e.g., State v. Briggs*, 256 N.W.2d 305 (Minn.1977), where we upheld three consecutive prison terms imposed on a defendant who was found guilty of three counts of aggravated assault for firing twenty rounds of ammunition at three people on a porch.

*State v. Marquardt*, 294 N.W.2d 849, 850–51 (Minn.1980).

The Minnesota Sentencing Guidelines provide for three instances where consecutive sentences are proper, including "[w]hen the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines." Minn. Sent. Guidelines II.F.2. That is the situation in this case. Appellant has been convicted of first degree assault of one victim and second degree assault of a second victim. The sentence for

first degree assault has been "executed according to the guidelines," as that phrase is interpreted in *State v. Lindsey*, 314 N.W.2d 823, 825 (1982).[3]

Further, section II.F.3 provides in part that:

> For persons given consecutive sentences, the sentence durations for each separate offense sentenced consecutively shall be aggregated into a single presumptive sentence.

Under this provision, the aggregate presumptive sentence would be 79 months (43 plus 36). Therefore, the 122 months to which appellant was sentenced represents, in actuality, an upward departure of just over one-and-a-half times the presumptive sentence. *See State v. Bicek*, 429 N.W.2d 289, 292 (Minn.App.1988), *pet. for rev. denied* (Minn. Nov. 23, 1988).

There is no evidence that appellant's sentence unfairly exaggerates the criminality of his conduct. Consequently, we hold that the trial court did not err in imposing consecutive sentences.

■ Appellant also argues that the trial court effectively negated the jury's verdict by imposing a total sentence in the same range as one for attempted first and second degree murder. Unlike the situation in *State v. Schmit*, 329 N.W.2d 56 (Minn. 1983), which is relied on by the appellant, there is no indication that the trial court intended to negate the jury's verdict. More important, there was sufficient justification here for the durational departure and for the consecutive sentencing, which determined the length of the sentence. Even in *Schmit*, the supreme court found support for a durational departure and only reduced the sentence from the maximum allowed by law (more than a triple departure) to a double departure. *Id.* at 58.

---

**2.** To the extent it may be argued that the reason given by the trial court for its durational departure duplicates the bases upon which consecutive sentences may be imposed, we note that the latter addresses the two actual victims while the former makes reference to the large number of people who were in the area and therefore at risk from the shots fired.

**3.** In *Lindsey*, defendant argued that compliance with section II.F.2 requires that the presumptive guideline sentence must be imposed. The supreme court disagreed, however, and ruled that section II.F.2 means "when the sentence for the most severe current conviction is, according to the guidelines, required to be executed and not stayed." *Id.*

## III.

■ Appellant argues that the trial court erred in refusing to depart downward. Appellant cites *State v. Kindem*, 313 N.W.2d 6 (Minn.1981) as support for his argument that his case is one of the "rare cases" in which such departure would be appropriate. We cannot agree. The supreme court in *Kindem* stated:

[W]hen substantial and compelling circumstances are present, the judge 'may' depart. This means that the trial court has broad discretion and that we generally will not interfere with the exercise of that discretion.

In this case, there were valid reasons for adhering to the presumptive sentence. * * * Thus, while there may have been arguments for departing downward, there were also reasons for not doing so. That being so, the determination whether or not to depart was clearly a discretionary decision for the trial court to make.

*Id.* at 7–8. We find no abuse of trial court discretion here in refusal to depart downward.

## DECISION

The trial court was within its discretion in imposing a double durational departure in sentencing appellant as his conduct was particularly serious and constituted a greater than usual danger to the safety of others. The trial court did not err in imposing sentences consecutively where there were multiple victims and in not departing downward.

Affirmed.

DAVIES, Judge (dissenting).

I respectfully dissent. Appellant was 21 years old, had no criminal history, and worked as a security guard. He apparently has no alcohol or drug problem. He was drawn to the scene by others. He discharged a handgun, bought for use on his job, a dozen times in less than a minute. The shots were in the open, directed pointlessly at scattered strangers. He testified that he stopped firing when "I came around to my senses until I finally realized * * * what actually I had done."

A sentence of ten years is clearly disproportionate measured by his conduct alone. The trial court may have been led to depart because of the racial overtones of the incident. That has not been recognized as a basis for departure and it would be ironic beyond acceptance were it to be approved as a reason for departure against this young black man.

Unfortunately, appellant hit two people, injuring one seriously, changing his actions into a first degree assault as to that person. He was convicted of that crime, and second degree assault as to another person.[1] The jury acquitted appellant of attempted murder, thus negating any intention to cause death. Absent death or an intent to cause death, appellant was convicted of the most serious possible charges.

The Minnesota Sentencing Guidelines were instituted to ensure consistency and equity in sentencing. Minn. Sent. Guidelines I.[2] To achieve these purposes, it is necessary that those convicted of similar actions receive similar sentences and that only "felons *substantially different from a typical case*" receive longer sentences. *Id.* (emphasis added). Nearly any extreme behavior can support a departure from the sentencing guidelines,[3] but nothing here

---

1. Minn.Stat. §§ 609.221–.222 (1988). Second degree assault is an assault "with a dangerous weapon" and first degree assault is an assault which "inflicts great bodily harm." *Id.* Great bodily harm is:

bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which *causes a permanent * * * impairment of the function of any bodily member or organ* or other serious bodily harm.

Minn.Stat. § 609.02, subd. 8 (1988) (emphasis added).

2. It is worth remembering also that the guidelines were part of a reform that took responsibility for sentence dur away from a state parole board and returned it to the judicial system. The judiciary must exercise that responsibility with care.

3. *See, e.g., State v. Gartland,* 330 N.W.2d 881, 883 (Minn.1983) (extreme negligence); *State v. Schmit,* 329 N.W.2d 56, 58 (Minn.1983) (violation of trust and authority); *State v. Vogelpohl,* 326 N.W.2d 635, 636 (Minn.1982) (cruelty to victim); *State v. Van Gorden,* 326 N.W.2d 633,

was extreme—except the aura of unreality. None of the usual criteria for durational departures exist.

An element of a crime may not be used as an aggravating factor. *State v. Pierson*, 368 N.W.2d 427, 435 (Minn.App.1985). The trial court claimed unusual cruelty. But all cruelty here arose from the severe and permanent injuries—and that was an element of the crime. The trial court also referred to greater than normal danger to the safety of others. Appellant shot a dozen times in succession. Appellant hit two of the six people in the general area and was given consecutive sentences as a result. Had he not created "greater than normal danger," he could not have committed the two crimes of which he was convicted.

The underlying principles of the sentencing guidelines are severity of the offense and criminal history. This appellant had no criminal history. He was deprived of the opportunity to show remorse by his reliance on the defense of self defense. Primarily because one person was seriously and permanently injured, which is an element of first degree assault, a double durational departure was imposed. Because two people were injured, consecutive sentences were imposed. Cumulatively, these decisions result in a 122–month (ten-year) sentence, which is in the same range as the presumptive sentences for first and second degree attempted murder. He was found innocent of those crimes. Durational departures in cases such as this reduce the utility of the guidelines. I would reverse the durational departure.

635 (Minn.1982) (invasion of a person's zone of privacy); *State v. Profit*, 323 N.W.2d 34, 36 (Minn.1982) (cruelty to other than victim); *State v. Stumm*, 312 N.W.2d 248, 249 (Minn. 1981) (vulnerability of victim); *State v. McClay*, 310 N.W.2d 683, 685 (Minn.1981) (greater than normal danger to the safety of others).