STATE of Minnesota, Respondent,

v.

Lazarus NMN LAMAR, Jr., Appellant.

No. C3–90–2424.

Court of Appeals of Minnesota.

July 30, 1991.

Review Denied Sept. 13, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Gary S. McGlennen, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY and DAVIES, JJ.

## OPINION

FOLEY, Judge.

This appeal arises out of a conviction for criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(d) (1988). It is claimed there should be a new trial because of advice by the trial court that there is a rule against substitution of appointed counsel. Challenge is also made to a durational departure at sentencing. We affirm.

## FACTS

Appellant Lazarus NMN Lamar, Jr. was found guilty by a jury of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(d) (1988). At trial, his defense was consent.

At 7 p.m. on March 24, 1990, Lamar accosted complainant, a 17–year–old fe-

male, as she took a shortcut on foot through an alley. A woman accompanied Lamar. Lamar said something to complainant that she did not understand. She kept walking. Lamar touched her on the shoulder. When complainant turned around, Lamar grabbed her hand and bent it back.

Lamar called her "trash" and told her she did not have a life because she was not a prostitute. Lamar then told complainant to follow the woman who was with him. Because she was afraid, complainant obeyed Lamar and followed the other woman.

When they got to the backyard at Lamar's home, he pushed complainant to the ground and ripped her clothing. Lamar produced a knife and stabbed it into the ground next to complainant. The other woman held complainant's arms, grabbed the knife and held it against complainant's chest. Lamar performed cunnilingus on complainant. He next penetrated her vagina with his fingers. Then he penetrated her vagina with his penis.

Complainant also testified that, after the rape, she heard Lamar tell his female accomplice he did not trust complainant and they should get rid of her. The accomplice talked Lamar into leaving in case someone had seen them. After Lamar and his accomplice left, complainant picked up her clothes, put them on and walked back to the house where she was staying. She called her mother in Kansas City.

The people with whom complainant was staying testified. Complainant's mother also testified. Their testimony corroborated complainant's testimony. There was evidence that complainant was hysterical after the attack. Complainant also thought her fingers were broken on the hand Lamar bent back. Those who saw complainant testified her clothes were torn, her hand looked broken and she had been scratched on her chest and face.

Complainant was later shown six photographs. She identified the photograph of Lamar as that of her attacker.

## ISSUES

1. Should Lamar be given a new trial because the trial court told him there was a rule against substitution of appointed counsel?

2. Did the trial court abuse its discretion by imposing a durational departure at sentencing?

## ANALYSIS

■ 1. We do not agree that Lamar should be given a new trial because the trial court told him there is a rule against substitution of appointed counsel. The colloquy occurred at the probable cause hearing. The transcript reads:

THE DEFENDANT: If for some reason that I feel that my attorney isn't representing me properly, when can I change my attorney?

THE COURT: You can make a change any time, but you can't get a different public defender, I don't believe.

THE DEFENDANT: Why is that?

THE COURT: Because that's the rule.

THE DEFENDANT: That's the rule?

THE COURT: Yes.

THE DEFENDANT: I don't understand that rule. I mean, if something comes up for some reason that there's a conflict of interest—

THE COURT: I will tell you this. If you ask a judge of this court for a different public defender, that will be denied. But you can seek counsel elsewhere, if you wish.

THE DEFENDANT: Okay. I just wanted to know.

THE COURT: I am just telling you the way it is.

THE DEFENDANT: That's good enough.

Lamar concedes his sixth amendment right to counsel does not give him an unbridled right to be represented by appointed counsel of his own choosing. *State v. Vance*, 254 N.W.2d 353, 358 (Minn.1977). Lamar maintains, however, that the trial court should have inquired to see if there was good cause why Lamar should be given a different public defender. *See McKee*

v. Harris, 649 F.2d 927, 931 (2d Cir.1981), cert. denied 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1981) (once trial begun, defendant has to show good cause such as conflict of interest to warrant getting new attorney).

Nonetheless, Lamar has not pointed to any error made by his attorney or given any ground why he had good cause to have a new attorney. Indeed, Lamar does not even challenge the sufficiency of the evidence supporting his conviction.

While the trial court told Lamar he could not have a different public defender under any circumstances, this is not an accurate statement of the law. See Vance, 254 N.W.2d at 358–59. Here there was no explicit request for a change in counsel and no showing of improper representation. Any error, therefore, was harmless. McKee, 649 F.2d 927 at 933 (defendant not entitled to new trial if the trial court's failure to ascertain whether good cause exists for substitution of appointed counsel causes no harm).

2. We also find the trial court did not abuse its discretion by imposing a durational departure at sentencing. The trial court sentenced Lamar to a term of 196 months. This was a double durational departure from the sentencing guidelines presumptive sentence.

Generally, in determining whether to depart in sentencing, a trial court must decide whether

the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question.

State v. Broten, 343 N.W.2d 38, 41 (Minn. 1984). Minn.Stat. § 609.342, subd. 1(d) provides that a person engaging in sexual penetration of another is guilty of criminal sexual conduct in the first degree if

the actor is armed with a dangerous weapon * * * and uses or threatens to use the weapon * * * to cause the complainant to submit;

The testimony adduced at trial supports the aggravating factors found by the trial court. See Williams v. State, 361 N.W.2d 840, 844 (Minn.1985) (this court will examine record to see whether the trial court's reasons justify departure). The aggravating factors the trial court gave were that

the crime involved injury and threats of death and the victim was subjected to multiple penetrations and excessive cruelty was involved.

Lamar contends these factors do not show his conduct to be more serious than the crime of which he was convicted. We disagree. The record shows complainant's hand was injured to the extent it appeared broken. This injury had nothing whatsoever to do with the use of the dangerous weapon. The threat of death was made *after* the sexual penetration and was not used to cause complainant to submit. Complainant also testified to multiple penetration. Finally, there was excessive cruelty. Complainant was subjected to verbal abuse and suffered additional degradation in having Lamar's female accomplice witness the entire sexual assault.

We find no abuse of the trial court's discretion. See State v. Eaton, 292 N.W.2d 260, 267 (Minn.1980) (a sentence will stand "if the trial court's discretion has been properly exercised" and is statutorily authorized).

## DECISION

Lamar is not entitled to a new trial because no harm resulted from the trial court's failure to ascertain whether there was good cause for substitution of appointed counsel. The trial court did not abuse its discretion in upwardly durationally departing in sentencing because its reasons justified departure.

Affirmed.

DAVIES, Judge (dissenting).

I respectfully dissent as to the double upward durational departure, for the guidelines' system only works if it is followed.

This is the typical violation of Minn.Stat. § 609.342, subd. 1(d) (1988). The appellant had a knife and used it to threaten the victim into submission. We are shocked, appalled. But finding this offense "signifi-

cantly more serious" than the usual case makes it difficult to imagine a weapon-forced rape that would not justify an upward departure.

The defendant should have received the standard guideline penalty.