**STATE of Minnesota, Respondent,**

v.

**Chad Allen ROURKE, Appellant.**

No. A03–1254.

Court of Appeals of Minnesota.

June 15, 2004.

Mike Hatch, Attorney General, St. Paul, MN and Charles C. Glasrud, Stevens County Attorney, Morris, MN, for respondent.

John M. Stuart, State Public Defender, Marie Wolf, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; WILLIS, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Appellant challenges the district court's decision to depart upwardly from the 98–month presumptive guidelines sentence to a sentence of 128 months for his first-degree assault conviction. Because we conclude that there were substantial and compelling circumstances to justify the upward durational departure, we affirm.

## FACTS

On January 28, 2003, Erica Boettcher picked up her boyfriend, appellant Chad Rourke, in her van, and Rourke forced Boettcher into the passenger seat and took over operating the vehicle. Boettcher had worked hard to make enough money to

afford the van, and Rourke knew how proud she was of it. Rourke began driving recklessly while threatening to kill Boettcher and threatening that she would never see her children again. He sped through a stop sign at approximately 60 miles per hour in a 30–mile–per–hour speed zone and smashed into a pole. Boettcher shattered bones in her ankle, requiring placement of 17 screws and a metal plate in her leg. Her medical expenses exceeded $20,000.

Stevens County charged appellant with assault in the first degree, assault in the second degree, assault in the third degree, criminal damage to property in the first degree, domestic assault, reckless driving, and careless driving. Pursuant to the parties' joint recommendation to the district court, appellant pleaded guilty to the charge of assault in the first degree and agreed to a sentence of 128 months in prison, an upward departure from the presumptive 98–month sentence.[1] In exchange, the district court dismissed the lesser charges and the state waived its right to seek a sentencing departure greater than the 128–month sentence. At the plea hearing, appellant admitted that he drove Boettcher's vehicle in a reckless manner and that he did so with the intent of scaring and intimidating Boettcher. Appellant admitted that the collision caused Boettcher great bodily harm.

The pre-sentence investigation report identifies a five-year pattern of ongoing, escalating, violence by appellant toward Boettcher. Boettcher told the investigator that appellant started physically abusing her in 1999. At that time, appellant began controlling whom she associated with; if appellant did not like whom Boettcher was spending time with he would become phys-

ically violent. Boettcher stated that when she would try to leave their home, appellant would bite her nose and tell her "if you're going to leave me, you aren't going to be pretty any more." Appellant would kick Boettcher in the stomach and the ribs and would not stop even at the point when she looked "lifeless." The violence and control escalated to the point where appellant would not allow Boettcher to see other people, and appellant threatened that he would kill Boettcher if she reported the violence. In connection with the pre-sentence investigation, appellant even described himself as a "control freak," noting that if Boettcher was someplace he did not want her to be, he would physically pick her up and move her. Appellant admitted that he would often threaten and yell at Boettcher and that he had previously violated a domestic abuse order for protection.

Starting in September 2002, when appellant was released from jail, until the date of the incident in this case, appellant's violence toward Boettcher became even worse. In September, appellant kicked his son and dragged him across the room by his arm. Appellant then began kicking Boettcher, who was pregnant, in the stomach and stated, "I hope the baby dies." Boettcher explained that at times she would wake up in the middle of the night and have appellant's hands around her throat choking her because her shoes were wet, and he thought she might have gone out. Boettcher described instances when, after appellant choked her, her throat would swell and she could barely talk. Boettcher stated that appellant's violence affected her children because they observed the violence and at times watched appellant kick or break their toys. And in

1. Before this offense, appellant was convicted of assault in the fifth degree for assaulting

Boettcher in 1999 and 2000.

fact, when Boettcher returned from the hospital with a cast on her foot following this incident, her children made comments like "Daddy's naughty."

Boettcher acknowledged that for a long time she had "covered up" for appellant, paying his fines, asking the prosecutors to "go easy" on him, and lying for him. Boettcher stated that appellant had previously received treatment for domestic violence, but the classes only taught him how to be more manipulative. Before the assault in this case, Boettcher was planning to move to a domestic-violence shelter because she did not feel she could safely otherwise leave appellant.

Based on this evidence, the court sentenced appellant to 128 months, an upward durational departure from the 98–month presumptive guidelines sentence. This appeal follows.

### ISSUE

Were there substantial and compelling circumstances to justify an upward durational departure from the presumptive guidelines sentence?

### ANALYSIS

■ The district court must order the presumptive sentence unless there are "substantial and compelling circumstances" that warrant departure. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981). The nonexclusive list of aggravating factors is "intended to describe specific situations involving a small number of cases." Minn. Sent. Guidelines cmt. II.D.201. Thus, the trial court must decide whether a defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question. *State v. Anderson,* 463 N.W.2d 551, 553 (Minn.App.1990), *review denied* (Minn. Jan. 14, 1991). But absent an abuse of discretion, this court will not overturn a departure from a presumptive sentence. *State v. Spain,* 590 N.W.2d 85, 88 (Minn.1999).

Here, in support of its decision to depart upwardly from the presumptive guidelines sentence, the district court cited four aggravating factors: (1) appellant's two prior gross-misdemeanor convictions involving the same victim; (2) appellant's abuse of his position of power and control over the victim; (3) the particular cruelty of the offense; and (4) the plea agreement. Appellant argues that these factors, singly or collectively, do not provide an adequate basis for an upward durational departure.

### *Plea agreement*

■ The plea agreement in this case included the parties' joint recommendation for a 128–month sentence, an upward durational departure from the 98–month guidelines sentence. But appellant argues that a plea agreement cannot form the sole basis for a sentencing departure. We agree.

In *State v. Givens,* 544 N.W.2d 774 (Minn.1996), the supreme court held that a defendant could waive sentencing under the guidelines. But one year after this decision, the Minnesota Legislature amended Minn.Stat. § 244.09, subd. 5 (2002), to state: "Sentencing pursuant to the sentencing guidelines is not a right that accrues to a person convicted of a felony; it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." Then, in *State v. Misquadace,* the supreme court acknowledged that the amended language in Minn.Stat. § 244.09 limited its holding in *Givens.* 644 N.W.2d 65, 67 (Minn.2002). The court determined that plea agreements only exist in the framework of rationality, predictability, and consistency when the negotiated agreements departing from the sen-

tencing guidelines are based on substantial and compelling circumstances. *Id.* at 71. Accordingly, "when reviewing a plea agreement that includes a sentencing departure, the court must determine whether the offense of conviction reflects any aggravating or mitigating circumstances that warrant a departure." *Id.*

Thus, a sentencing court cannot depart from the presumptive sentence based solely on the plea agreement. But in this case, the sentencing court cited three other aggravating factors justifying its upward durational departure. Therefore, because there were other aggravating factors independently supporting the district court's decision to depart upwardly, the district court did not abuse its discretion by citing the plea agreement.

**Particular cruelty**

Next, appellant argues that the district court abused its discretion by basing its upward departure on the particular cruelty of the offense. Appellant contends that, while his actions were "stupid," they were not so different in kind or degree from a "typical" first-degree assault offense, and therefore did not constitute "particular cruelty."

■ Treating the victim with particular cruelty is one of a nonexclusive list of factors allowing the court to depart from the presumptive sentence. Minn. Sent. Guidelines II.D.2.b.(2). Threats and gratuitous infliction of pain qualify as "particular cruelty" within the sentencing guidelines. *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981); *see, e.g., State v. Cermak*, 344 N.W.2d 833, 840 (Minn.1984) (holding that offender acts with particular cruelty when he threatens to break every bone in victim's body if victim reports sexual abuse); *State v. Lamar*, 474 N.W.2d 1, 3 (Minn.App.1991) (affirming upward durational departure in sentence where offender made death threat after rape), *review*

*denied* (Minn. Sept. 13, 1991); *State v. Hines*, 343 N.W.2d 869, 872–73 (Minn.App. 1984) (threats of death and the cutting off victim's finger were particularly cruel); *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981) (concluding that psychological terror is an aggravating factor supporting upward departure).

■ Here, appellant drove Boettcher's van recklessly through town while verbally abusing Boettcher by threatening to kill her and telling her that she would never see her children again. At the plea hearing, appellant admitted that he did so with the intention of scaring and intimidating Boettcher. Appellant almost collided with another vehicle and accelerated to a high rate of speed before racing through a stop sign and slamming into a pole, severely injuring Boettcher.

We acknowledge that based on these facts, it is a close call whether appellant treated Boettcher with a level of cruelty beyond that typically associated with assault in the first degree. We are persuaded, however, that because appellant: (1) forced Boettcher into riding with him and terrorized her over an extended period of time; (2) severely injured her while using her van, which he knew she was very proud of and had worked hard to buy; and (3) threatened to kill Boettcher and keep her from her children, that the district court did not abuse its discretion by determining that the particular cruelty of the offense was an aggravating factor supporting an upward durational departure.

**Prior convictions involving victim**

■ Next, appellant contends that the district court abused its discretion by using his two prior gross-misdemeanor convictions as aggravating factors supporting an upward durational departure, because the sentencing guidelines only permit a departure when the victim is injured and

there is a prior felony conviction. Respondent counters that because the list of aggravating factors is nonexclusive, the trial court properly used the prior gross misdemeanor convictions as grounds for an upward durational departure.

Minnesota Sentencing Guidelines II. D.2.b.(3) states that if the defendant's conviction is of an offense in which the victim was injured, and there is a prior felony conviction for an offense in which the same victim was injured, the prior conviction is an aggravating factor supporting departure.

Here, appellant has two prior gross-misdemeanor convictions for assault in the fifth degree in 1999 and 2000; in both cases Boettcher was the victim. But the sentencing guidelines specifically state that a prior *felony* conviction is an aggravating factor that supports departure; the state has cited no case law to support its position that the sentencing court may use non-felony convictions as an aggravating factor.

The state also argues that the district court did not abuse its discretion by using the prior convictions as an aggravating factor because the intent of this factor is to punish individuals for committing repeated crimes against persons. *State v. Larson,* 379 N.W.2d 165, 167 (Minn.App.1985). "This is so because repeated crimes against persons pose a greater threat to society than repeated property crimes." *Id.* Therefore, the state contends that while appellant's prior convictions were gross misdemeanors, they were crimes against a person, and indicate that he poses a greater threat to society.

■ But, again, the sentencing guidelines clearly state that this factor applies when there are prior *felony* convictions. We have no authority to add language to the sentencing guidelines, thereby supplying what the sentencing guidelines com-

mission purposely omitted or inadvertently overlooked. *State v. Jones,* 587 N.W.2d 854, 856 (Minn.App.1999) (prohibiting this court from imposing a limitation on sentencing that was not clearly intended by the sentencing guidelines commission), *review denied* (Minn. Mar. 16, 1999). Moreover, allowing courts to use prior misdemeanor convictions would significantly increase the number of cases in which this factor could be used as grounds for upward departure. Thus, we conclude that the district court abused its discretion by using appellant's two prior gross-misdemeanor convictions as an aggravating factor to support the upward durational departure.

### Abuse of a position of power

■ Finally, appellant argues the district court abused its discretion in departing from the presumptive guidelines sentence because appellant "utilized [his] position of power and control over the victim based upon [his] prior abusive conduct."

Abuse of positions of trust and authority are aggravating factors justifying a durational departure. *See State v. Campbell,* 367 N.W.2d 454, 460–61 (Minn.1985); *Cermak,* 344 N.W.2d at 839. Appellant contends, however, that generally, the cases that have used the defendant's position of power as an aggravating factor involve victims who are children and defendants who are adult authority figures. *See, e.g., State v. Carpenter,* 459 N.W.2d 121 (Minn. 1990) (church youth-group sponsor convicted of statutory rape); *State v. Olson,* 436 N.W.2d 817 (Minn.App.1989) (live-in boyfriend victimized and murdered his girlfriend's young daughter), *review denied* (Minn. Apr. 26, 1989); *State v. Ahern,* 349 N.W.2d 838 (Minn.App.1984) (step-father sexually abused step-daughter).

Respondent argues, however, that this case is similar to *State v. Lee,* 494 N.W.2d 475 (Minn.1992), in which the supreme court affirmed the district court's use of the defendant's position of power as an aggravating factor when a Hmong community leader, who was also a teacher at a vocational school, raped two women in the Hmong community.

Although this particular aggravating factor has not routinely been applied to victims of domestic abuse, we have found no cases that limit the application of this factor to child victims. Furthermore, as respondent notes, there are many relationships fraught with power imbalances that may make it difficult for a victim to protect himself or herself—teacher-student, clergy-parishioner, employer-employee—to name a few. Here, given the long history of egregious domestic violence perpetrated by appellant against Boettcher, and specifically the power and control appellant achieved by years of terrorizing the victim, we are persuaded that the district court did not abuse its discretion by considering appellant's position of authority as an aggravating factor supporting the upward departure.

Our holding is further supported by the fact that there are additional grounds in the record that justify an upward departure. The Minnesota Supreme Court has held that if the reasons given for departure are "improper or inadequate, but there is sufficient evidence in the record to justify the departure, the departure will be affirmed." *Williams v. State,* 361 N.W.2d 840, 844 (Minn.1985).

█ Accordingly, we note that the vulnerability of the victim is an aggravating factor supporting a departure upward. Minn. Sent. Guidelines II.D.2.b.(1); *see also State v. Wickstrom,* 405 N.W.2d 1, 6–7 (Minn.App.1987), *review denied* (Minn. June 30, 1987). In *State v. Elvin,* 481 N.W.2d 571, 576 (Minn.App.1992), *review denied* (Minn. Apr. 29, 1992), we held that the defendant's repeated attacks and intimidation against his live-in girlfriend supported the district court's decision to depart upwardly based on the particular vulnerability of the victim. Here, because of the level of extreme and escalating ongoing violence, appellant's threats to kill Boettcher, and his efforts to control and intimidate Boettcher, we conclude that Boettcher was in a position of particular vulnerability. Thus, while not identified by the district court, this was also a sufficient aggravating factor supporting the district court's upward departure.

We acknowledge and caution that not every case involving domestic violence will or should provide grounds for finding that the offender held and abused a position of power or authority over the victim. But on these egregious facts, we will not disturb the district court's decision to impose an upward durational departure.

## DECISION

The departure upward was not supported by appellant's prior gross-misdemeanor convictions. But because there were other substantial and compelling circumstances to justify the upward durational departure, the district court did not abuse its discretion in sentencing appellant to 128 months in prison.

**Affirmed.**