STATE of Minnesota, Respondent,

v.

Grailon Leon WILLIAMS, Appellant.

No. C5–87–664.

Supreme Court of Minnesota.

Jan. 22, 1988.

Melissa Sheridan, Minneapolis, for appellant.

Beverly Wolfe, Minneapolis, for respondent.

SIMONETT, Justice.

Defendant Grailon Leon Williams was convicted of murder in the first degree for firing the shots that killed Christine Kreitz. The state claimed Christine was killed on the orders of Minneapolis gang leader John Scruggs and with the help of two other accomplices, Mary Braxton and Sandra White. On appeal, Williams alleges insufficiency of the evidence, improper plea agreements made with accomplices Braxton and White, improper admission of their testimony, improper admission of certain testimony by other witnesses, improper instruction of the jury, and ineffective assistance of counsel. We affirm.

Christine Kreitz was killed early in the morning of October 13, 1985. At about 2:30 a.m., the night custodian at the Nicollet Tennis Center, located in Martin Luther King Park in south Minneapolis, heard two explosive sounds in rapid succession. When daylight broke, he found Christine's body lying near some dome-covered tennis courts and called the police.

The victim had bruises on her face and neck and an abrasion at her temple. Though her pants were pulled down to her knees and her underwear removed, medical examiners found no evidence that she had been sexually assaulted. Blood on her right hand suggested that her body had been kicked over after she was shot. Police officers noticed two sets of fresh footprints in the mud leading away from the body. A comparison of those prints to the

shoes of the alleged assassins revealed that one set could have been made by Mary Braxton, but the other could have been made by neither Sandra White nor Braxton. An autopsy revealed two gunshot wounds to the victim's head; the fragments of two .22 caliber bullets were found inside her skull. Because no casings were found near the body, police concluded the murder weapon was a revolver.

Defendant, his accomplices, and the victim, Christine Kreitz, had been associated with a street gang called the Black Gangster Disciple Nation ("the Disciples"). John Scruggs was the self-appointed leader of the gang. Three weeks before Christine was killed, several gang members burglarized a Minneapolis gunshop. The police were able to apprehend and arrest only Christine. Witnesses testified that Scruggs feared Christine had or soon would "snitch" to the police about the gang's involvement in the burglary. Neither Scruggs nor defendant testified at trial.

Viewing the evidence in the light most favorable to the verdict, *State v. Adams,* 295 N.W.2d 527, 530 (Minn.1980), the remaining facts, as testified to by White, Braxton, and other gang members, are as follows. On the evening of the murder, a number of Disciples, including the accomplices and Christine Kreitz, were at Braxton's house, preparing to leave for a party. Scruggs had instructed defendant to see that he and White brought with them a .22 caliber revolver in White's possession. Witnesses said Scruggs called White, Braxton, and defendant Williams into the bathroom, and later to other rooms of the house. Scruggs said Christine had to be killed that night because she was a snitch. He instructed the others to walk Christine home, shoot her with White's gun, and make it appear as if Christine had been raped, in order to confuse investigators. After the four had left, Christine Canada, a Disciple member and guest at Braxton's home, asked Scruggs where the four were going. Scruggs answered, "on a mission."

White says she gave her revolver to Williams as they neared the park. The four stopped near the enclosed tennis courts. While Braxton and White were rolling a joint, they heard a gunshot and turned around to see Christine fall to the ground. They testified that they saw Williams standing over Christine and saw him shoot her a second time. White says she heard the gun click three times after appellant fired the second shot; Braxton says the gun clicked one time between the two shots.

After the murder, defendant, White and Braxton returned to Braxton's house. Scruggs and Christine Canada were there when the three arrived. The four accomplices again met in the bathroom, where Scruggs learned Christine had been killed, but that the three had forgotten to "make it look like a rape."

Defendant took a shovel Braxton kept in her bathroom and buried the gun. Other gang members and friends returned to Braxton's house. Scruggs again called his accomplices into the bathroom and told them to return to the park to make it look as if Christine had been raped. They did so. When the three returned, gang member Marion Gilchrist asked Scruggs where they were coming from. Scruggs said they were doing a mission for him. Gilchrist noticed all three were wearing gloves.

Scruggs later suggested that defendant recover the gun and throw it into the Mississippi River. Orlando Richardson and Sharon Bonapart saw defendant behind Braxton's house. When Richardson asked Scruggs what defendant was doing, Scruggs replied defendant was "taking care of some business for me." Gang member Donald Hunter testified he saw defendant and White come from the side of the house. Defendant was carrying the shovel, and White a brown paper bag. Williams and White took a ride back to St. Paul. While on the bridge over the Mississippi River, defendant rolled down his window and tried to throw the bag over the bridge, but it hit the railing and landed on the bridge itself. Defendant then told the driver he had lost his hat out the window. The driver backed up, and defendant found the bag and threw it into the river. He

told the driver and another passenger the paper bag had contained a wine bottle.

Against Scruggs' orders, Sandra White discussed the murder with other gang members, some of whom police arrested on various charges. The police learned the identity of the murderers from a gang member involved in the gunshop burglary. Police then arrested White and Braxton, who confessed to their involvement and also implicated Scruggs and defendant.

When police arrested defendant, he denied any involvement in the murder. He said he was at a restaurant in St. Paul on the night Christine was killed, but said he could not provide police with any names of people who might have seen him there.

White and Braxton both reached plea agreements with the state. In return for testifying truthfully against defendant and Scruggs, the state agreed to drop the first degree murder charges and allow them to plead guilty to conspiracy to commit murder. The agreement provided that their sentencing would be delayed until after they had testified against defendant and Scruggs.

## I.

Defendant first contends the jury's verdict is not supported by sufficient evidence. The witnesses present when defendant shot Christine were two of his accomplices, Mary Braxton and Sandra White. Both women placed Williams at the scene of the crime and identified him as Christine's assassin. Their testimony was consistent on all essential points. The accomplices testified that they met privately with Scruggs and Williams on the evening of the murder, and that Scruggs ordered them to kill Christine. They testified that the three of them left Braxton's house with Christine, that before they reached the park, White slipped defendant her gun, and that defendant shot Christine near the enclosed tennis

courts. Both said the gun clicked after defendant had shot Christine.[1] When they returned, the three again met with Scruggs, and told him they had completed their mission but had forgotten to make the crime look like a rape. The women heard defendant say he had tried to shoot Christine six times, but the gun had clicked. They heard Scruggs tell defendant to take the shovel from Braxton's bathroom and bury the gun.

The women also testified that when they and Williams returned to the park, defendant turned Christine's body over, pulled down her pants, and ripped off her underwear. White confirmed that defendant later threw the gun over the bridge into the Mississippi River.

Though the testimony of White and Braxton was conclusive as to Williams' guilt, accomplice testimony may be unreliable and therefore must be corroborated. Minn.Stat. § 634.04 (1986).[2] Corroborating evidence need not establish a prima facie case of the defendant's guilt, but it must link the defendant to the crime. *State v. Cooper*, 296 Minn. 48, 51, 206 N.W.2d 356, 358 (1973). The defendant's association with those involved in a crime, if the association suggests opportunity or motive to commit the crime, corroborates accomplice testimony. *State v. Adams*, 295 N.W.2d at 533. The evidence corroborating accomplice testimony may be circumstantial or direct. *Id.*

The state corroborated the accomplice testimony with the testimony of various Disciple members and their friends also present at Braxton's house on the night of the murder. Those witnesses were Christine Canada, Marion Gilchrist, Donald Hunter, Orlando Richardson, and Sharon Bonapart. They testified that defendant was at Braxton's house on the night of the murder, met secretly with his accomplices

---

**1.** White testified she heard the gun click three times after defendant fired the second shot; Braxton says the gun clicked one time between the two shots.

**2.** Minn.Stat. § 634.04 (1986) provides:

A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

and then left with White, Braxton, and Christine immediately before the murder, thereafter returned with White and Braxton after the murder, and had a third secret meeting with Scruggs and the two women, after which he was seen returning to Braxton's house with White and Braxton, all three wearing gloves. Defendant was then seen in the backyard of Braxton's house late at night with a shovel and a brown paper bag taking care of "business" for Scruggs, and had Orlando Richardson stop his car so defendant could get out and throw a paper bag into the river.

In addition, witnesses testified that Sandra White owned a .22 caliber revolver that sometimes clicked instead of firing. Police concluded by examining the bullet fragments that a .22 caliber revolver was used in the murder. Christine's body was positioned to make it appear as if she had been raped, and some of her clothes were removed. Police experts determined that one set of footprints leading away from the body probably belonged to Mary Braxton and that the other set did not belong to Sandra White. This suggested the presence of a third person at the scene of the crime. Finally, the witnesses who testified that defendant was at Braxton's house contradicted defendant's story that he spent the night at a restaurant. *See State v. Armstrong*, 257 Minn. 295, 306–07, 101 N.W.2d 398, 406 (1960).

The testimony of these five witnesses, along with the other corroborating evidence, is more than sufficient to sustain the conviction. Defendant's close association with White, Braxton, and Scruggs on the night Christine was killed, the suspicious nature of his conduct, the statements Scruggs made to various of the witnesses, and defendant's inability to explain any of these in a way not consistent with his guilt, allowed the jury to conclude defendant was guilty beyond a reasonable doubt.

In *State v. Adams*, 295 N.W.2d at 533–34, we sustained a third-degree murder conviction where the evidence corroborating accomplice testimony showed the defendant was with his accomplices on the evening of the murder, had access to his fiance's gun, and was similar in general appearance to a man witnesses placed near the crime scene immediately after the murder. The corroborating evidence in this case is equally convincing, and certainly sufficient to sustain the conviction when the evidence is viewed in the light most favorable to the verdict. *State v. Adams*, 295 N.W.2d at 530; *State v. Hawkins*, 260 N.W.2d 150, 157 (Minn.1977).

## II.

Defendant's second challenge is to the constitutionality of admitting accomplice testimony.[3] Williams contends the admission of Braxton's and White's testimony constituted plain error and denied him due process of law under the state and federal constitutions.

This court has unequivocally held that plea negotiations granting favorable treatment in return for truthful testimony are not per se unconstitutional. *State v. Jones*, 392 N.W.2d 224, 232 (Minn.1986). We have cautioned, however, that due process requires "some limits on the state's inducements to a witness." *Jones*, 392 N.W.2d at 232.

The state asked that White and Braxton not be sentenced until after they had testified in Williams' trial. The defendant claims this delay in sentencing unconstitutionally pressured the witnesses to testify favorably to the state's case. The defendant also observes that Sandra White's attorney, while examining his client at her plea hearing, suggested that "truthful testimony" meant that her testimony should be consistent with an extensive statement she had made to a police investigator. Defendant claims White understood that receiving a more lenient sentence depended upon consistent rather than on truthful testimony. Finally, White's and Braxton's respective counsel reminded the women of the facts in *State v. Rud*, 372 N.W.2d 434

---

**3.** Defendant challenges the admission of this testimony both in his attorney's brief and in his pro se brief. He also alleges in his pro se brief that his attorney's failure to object at trial to the admission of the accomplice testimony amounted to ineffective assistance of counsel.

(Minn.App.1985),[4] in order to emphasize that the benefit of their plea agreements depended upon their continued cooperation and truthful testimony in the Williams case. Defendant claims this, too, pressured the women to implicate him in the murder regardless of whether he actually participated in it.

Though a plea agreement which conditions favorable treatment solely upon the content or result of an accomplice's testimony may violate due process (see *United States v. Waterman*, 732 F.2d 1527, 1531 (8th Cir.1984), *cert. denied* 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985)), no such condition attached to White's or Braxton's plea agreement. By delaying their sentences until after they testified, the state ensured their cooperation without conditioning leniency upon the content or the result of their testimony, insisting only that their testimony be truthful. We have before considered and rejected the claim that delaying accomplice sentencing until after the trial violates due process. *State v. McGlynn*, 292 Minn. 405, 408, 195 N.W.2d 583, 585 (1972). The jury was certainly aware of the terms of the agreements, thanks to vigorous and thorough cross-examination of the accomplice witnesses by defense counsel. The jury therefore had the knowledge it needed to weigh the credibility of the testimony in light of the terms of the agreements.

We also cannot say that the questions put to White by her own attorney rendered unconstitutional the admission of her testimony. Absent any indication that her confession statement to the police investigator (repeated in her sworn testimony at her own plea hearing) was false, it cannot be said her lawyer did more than remind her that testimony inconsistent with her past statement would raise legitimate doubts in the judge's mind about her veracity.

That both women's attorneys reminded them at their respective hearings about the facts in *State v. Rud* also did not violate Williams' right to due process of law. Indeed, even if the court had sentenced Braxton and White before they had testified in the Williams trial, they still might have lost the benefit of their plea bargain if they had failed to testify and testify truthfully, as required by their agreement. A plea agreement is in many ways analogous to a contract whose terms will not be enforced to benefit a breaching party. *See Ricketts v. Adamson*, — U.S. —, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); *United States v. Runck*, 601 F.2d 968 (8th Cir.1979); *State v. Rud, supra*. It is neither unconstitutional nor improper to remind an accomplice of the terms of the agreement, or that reduced charges and a more lenient sentence depend upon the accomplice's willingness to fulfill his or her part of the bargain. Finally, because the accomplice testimony was properly admitted, defendant was not prejudiced by his counsel's failure to object.

## III.

In addition to insufficiency of the evidence and improper admission of the accomplice testimony, Williams alleges other errors in his pro se brief. He contends the trial court improperly denied his motion for a change of venue. A trial court has wide discretion in deciding whether to grant a motion for change of venue and will be reversed on appeal only for a clear abuse of its discretion. *State v. Salas*, 306 N.W.2d 832, 835 (Minn.1981). Not only does Williams fail to show such an abuse, but his own counsel conceded before trial that most of the prospective jurors knew little about the case. We therefore cannot conclude that denial of the venue motion was improper nor impermissibly prejudicial to the defendant.

Defendant also claims the court erred in admitting testimony about the .22 caliber revolver used to commit the murder. The gun itself could not be produced nor admitted as a trial exhibit because it was never recovered. There was evidence, however, that a .22 caliber revolver had

---

4. In *Rud,* the witness had agreed to testify truthfully in exchange for a lesser sentence, but testified untruthfully at trial and later withdrew his truthful statements. The trial judge therefore decided not to follow the terms of the plea agreement.

been used in the murder. Testimony that White owned such a gun was therefore relevant to the state's case and was properly admitted.

■ Defendant apparently objects to the court's admission of a portion of the statement of a gang member who did not testify at trial, but had at an earlier time provided police with information leading to the arrest of the four murder accomplices. The gang member's statement was not offered for the truth of its content, but only to buttress the testimony of the police officer who testified at trial as to what that member had told him. We cannot say the trial court erred by admitting the statement; and, in any event, the error alleged would be harmless.

Finally, defendant claims the trial court failed to properly instruct the jury on accomplice testimony and intent. The trial court's instructions followed CRIMJIG 3.18 (a testimony instruction) and CRIMJIG 11.-13 (intent instruction). The court correctly instructed the jury, and defendant's counsel properly declined to object to those instructions.

We find no merit in any other objections defendant raises in his "pro se" brief.

## IV.

The parties agree that under Rule 27.03, subd. 4(B), of the Minnesota Rules of Criminal Procedure, defendant must receive credit for the time he has already spent in jail while charged with Christine Kreitz' murder. The rule requires a factual finding to be made by the trial court at the time it imposes the sentence. There may be a question as to whether defendant was jailed subject to other charges during the time of his incarceration. We therefore remand to the trial court for its determination of the amount of jail credit owing to Williams.

Conviction affirmed; remanded for determination of jail credit.