STATE of Minnesota, Respondent,

v.

Randy Dale FOLKERS, petitioner, Appellant.

No. C9–96–1338.

Supreme Court of Minnesota.

July 9, 1998.

---

19. *Id.* at 136, 101 S.Ct. 426.

20. *Id.*

Barry V. Voss, Voss & Hickman, P.A., Minneapolis, for Appellant.

Hubert H. Humphrey, III, Minnesota Attorney General, St. Paul, James C. Backstrom, Dakota County Attorney, Scott A. Hersey, Assistant Dakota County Attorney, Hastings, for Respondent.

## OPINION

GARDEBRING, Justice.

This case arises from the 1996 conviction of Randy Folkers for the murder of his girlfriend Alicia Srozinski. Folkers was convicted of two counts of second-degree murder, Minn.Stat. § 609.19, subds. 1 and 2 (1996), and sentenced to 360 months, an upward departure from the presumptive sentence of 306 months.

On appeal to the court of appeals, Folkers raised several issues: 1) whether the trial court erred in admitting a letter describing a plea agreement between the state and Folkers' friend Joshua Ploog; 2) whether the evidence was sufficient to support the conviction; and 3) whether the upward departure in sentencing was an abuse of discretion. The court of appeals affirmed the conviction, holding that the trial court abused its discretion by admitting the plea agreement into evidence, but that the error was harmless, not requiring reversal of the conviction. The court also held that the evidence was sufficient to support the conviction and that the trial court did not abuse its discretion by sentencing Folkers to 360 months.

Folkers raises the same issues in his appeal to this court.[1] While the court of appeals concluded that the trial court's admission of the plea agreement into evidence was error, though harmless, we conclude that there was no error. We further hold that the evidence was sufficient to sustain the conviction and that the trial court did not err in departing durationally from the presumptive sentence.

At trial, there was little dispute that the shooting of the victim, Alicia Srozinski, occurred on the night of September 19, 1995, in the garage of Folker's home in Minneapolis. Instead the issue was whether the murder was committed by Folkers or by his friend, Joshua Ploog, who admitted being present in the garage at the time of the murder. The trial testimony showed that on the night of the murder, the victim met Folkers at a bar and left with him to go to the garage at his home, accompanied by Ploog and another of Folkers' friends, Pat Hart. At the garage, Folkers and the victim argued over whether Folkers would attempt to collect $200 that the victim thought was owed to her by a mutual friend. Hart gave Folkers $200 in cash to give to the victim and then left the garage, because he did not want to be around any further arguing. The shooting occurred shortly thereafter, although trial testimony was conflicting as to whether Folkers or Ploog shot the victim.

The state presented testimony of the victim's co-workers and friends, as well as that of Ploog, who was present at the murder scene. Srozinski's co-workers and friends testified that Folkers' and Srozinski's relationship was abusive and that Srozinski was often seen with bruises and bite marks she claimed Folkers had inflicted on her. Ploog testified that Folkers shot Srozinski, but that Folkers had said that he did not mean to shoot her and that he thought there were empty chambers in the gun. Ploog also testified that Folkers said he meant to shoot above her head.

The next day, Folkers and Ploog placed Srozinski's body in her own van, abandoned it in a parking lot and also disposed of the gun by throwing it over the guardrail of a bridge into the Mississippi River. The two then returned to Folkers' garage, and according to Ploog, he left as Folkers started to clean up evidence of the murder. Ploog further testified that Folkers asked him to lie to police and say that they last saw Srozinski at the bar that night and he agreed. In turn,

---

1. Although the court of appeals ruled on an additional issue, the admission of evidence of prior abuse, we do not consider it here because it was not properly raised in the petition for review to this court.

Folkers said he would "keep him out of it" if Ploog stuck to the agreed-upon story. Although initially Ploog did as. Folkers asked, eventually he told the police that Srozinski had returned with them to Folkers' garage that night and that Folkers had shot her.

Before Folkers' trial, Ploog entered into a plea agreement with the state that provided that he would be charged with a lesser offense, aiding an offender (after the fact), Minn.Stat. § 609.495, subd. 1 (1996), in exchange for "truthful, complete and accurate "information" about the shooting death of Alicia Marie Srozinski * * * [including] any and all details regarding the actual shooting, the events leading up to it and the events following it." ·

The state's case also included the testimony of the various law enforcement officers who discovered the victim's body and conducted interviews of persons having knowledge about the incident, among them Detective Bradley Wayne. Det. Wayne read into the record a transcribed interview with Folkers, in which he admitted that the victim had come to his garage with him and that he had later suggested to Hart and Ploog that they tell the police she had not been there. In addition, testimony as to physical evidence was given by six forensic scientists and an agent from the Minnesota Bureau of Criminal Apprehension. The physical evidence was gathered from the van where the victim's body was found and from Folkers' garage where the murder took place. It included human blood and tissue from the floor, ceiling and other areas of Folkers' garage, all consistent with Srozinski's blood type. In addition, evidence of the clean up was also found in and around the garage. There was testimony that markings on the victim's face matched the shape of the buttons and handset of the telephone receiver found in Folkers' garage and that the victim had two $100 bills in her pocket when she was found. Finally, Ploog's girlfriend testified that, several days after the murder, Ploog told her that Folkers had shot Alicia Srozinski after the argument in the garage.

Folkers' case rested primarily on his own testimony. He testified that Ploog shot Srozinski by accident while handling Folkers'

gun. He claimed that after the gun had discharged, Ploog had told him that it just went off while he was examining it to see if it was loaded. He also said that the two of them put the body in the van and later cleaned up the blood in the garage. In addition, Folkers' wife Wendy Folkers testified that he had told her of his affair with the victim and that he had ended it. His brother Reginald Folkers merely testified to the incidents that occurred on the day that Folkers was arrested in Reginald's home.

For purposes of this appeal, a critical part of the trial was the handling by both the state and the defense of the plea agreement between the state and Ploog. The first reference to the plea agreement came during the defense counsel's cross-examination of Sgt. Pete Jackson, a Minneapolis homicide detective who participated in the investigation of the Srozinski murder. Folkers' counsel showed him a copy of the plea agreement, in order to refresh his memory as to its details, and questioned him regarding its specific provisions, including the severity level of the crime with which Ploog was to be charged. However, defense counsel never moved to have the document itself introduced into evidence. On redirect examination of Sgt. Jackson, the state attempted to introduce into evidence a copy of the letter containing the plea agreement. Folkers' counsel objected to its receipt and the state and defense counsel presented arguments to the court, outside the presence of the jury. The court overruled Folkers' objection and received the plea agreement into evidence, noting that the defense had initially raised the issue of the plea agreement, that it was an essential part of the case and that the document had been seen by the jury during defense counsel's cross examination of Sgt. Jackson.

The state did not ask Sgt. Jackson any questions regarding the plea agreement after its receipt into evidence, but did reference it during redirect examination of Ploog, which occurred later. The exchange was as follows:

Q. Now, Mr. Ploog, when you made—or your attorney made an agreement with the Dakota County Attorney's

Office for you to testify, you learned that your obligation was to tell the truth?

A. Yes.

Q. Okay. And you knew that as to the disposition of the felony charge, with which you would be charged, the sentence would be up to the judge?

A. Yes.

Q. There was no agreement as to sentencing?

A. No.

Q. Do you understand that you can go to jail or prison?

A. Yes.

The state made no further reference to the plea agreement nor did it elicit any testimony from any other witness regarding its substance.

Folkers argues that the plea agreement is inadmissible for two reasons: (1) that Minn. R. Evid. 410 prohibits its introduction and (2) that admission of the plea agreement constituted improper "vouching" by the state for Ploog's credibility. This court's consideration of Folkers' claim on this issue is governed by the concept that "[e]videntiary * * * rulings generally rest within the trial court's discretion and will not be reversed absent a clear abuse of discretion." *State v. Grayson*, 546 N.W.2d 731, 736 (Minn.1996) (citation omitted).

Generally speaking, when determining whether a plea agreement is admissible or not, Minn. R. Evid. 410 will govern. It provides that:

Evidence of a plea of guilty, later withdrawn, * * * or of an offer to plead guilty or nolo contendere to the crime charged or any other crime or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil, criminal, or administrative action, case, or proceeding *whether offered for or against the person who made the plea or offer.* Minn. R. Evid. 410 (emphasis added).

However, the facts of this case take it outside the reach of this rule. In interpreting Rule 15.06 of the Minnesota Rules of Criminal Procedure [2], which is virtually identical to Minn. R. Evid. 410, this court has held that its prohibition on the admission of plea agreements is limited to cases involving the Fifth Amendment privilege against self-incrimination. *State v. Dukes*, 544 N.W.2d 13, 18 (Minn.1996). We have said further that "[Rule 15.06] and Minnesota Rule of Evidence 410 are simply irrelevant to a situation * * * where the testimony was not offered in favor of or against the declarant." *Id.* In *Dukes*, we held that admission of a plea agreement between the state and the defendant's accomplice was not error because the testimony was not being offered in favor of or against the declarant. *Id.* at 17–18.

■ Similarly, in this case, the admission into evidence of Ploog's plea agreement did not implicate his constitutional privilege against self-incrimination nor was it offered in favor of or against him. Rather, defense counsel hoped to impeach Ploog by reference to its favorable terms.

Folkers' argument that the introduction of the plea agreement constitutes improper vouching by the state for Ploog's credibility also fails. This court has previously held that plea agreements that grant favorable treatment to witnesses in return for truthful testimony are not per se unconstitutional. *State v. Jones*, 392 N.W.2d 224, 232 (Minn. 1986). We have also held that it is "neither unconstitutional nor improper to remind an accomplice of the terms of the agreement, or that reduced charges and a more lenient sentence depend upon the accomplice's willingness to fulfill his or her part of the bargain." *State v. Williams*, 418 N.W.2d 163, 168 (Minn.1988). Finally, specifically in response to a similar claim of vouching, we said in *State v. Patterson*, 577 N.W.2d 494, 497 (Minn.1998), that evidence of the terms of a

---

2. Rule 15.06 of the Minnesota Rules of Criminal Procedure states: "If the defendant enters a plea of guilty which is not accepted or which is withdrawn, neither the plea discussions, nor the plea agreement, nor the plea shall be received in evidence against or in favor of the defendant in any criminal, civil, or administrative proceeding."

witness' plea agreement does not constitute improper vouching when it includes a truthfulness provision, unless the state directly or by implication expresses an opinion as to the witness' credibility.

This is consistent with the view of the majority of the federal circuit courts of appeal, which have held that admission of a plea agreement containing a truthfulness provision alone, with no improper activity by the prosecution, does not constitute improper vouching.[3] More specifically, the Eighth Circuit has stated that vouching occurs "when the government implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility." *United States v. Beasley*, 102 F.3d 1440, 1449 (8th Cir.1996) (citation omitted).

Here the state merely introduced the entire plea agreement into evidence, without eliciting any direct or indirect vouching testimony from any witness regarding the truthfulness portion of the agreement. Counsel for the state did not refer to facts outside the record to suggest that Ploog was telling the truth or express any personal opinion about Ploog's credibility. In fact, it was primarily Folkers' defense counsel's inquiry into the terms of Ploog's plea agreement, which influenced the state's decision to introduce the plea agreement.[4] Because the state did not engage in any improper activities in addition to introducing the plea agreement, we conclude that no vouching occurred in this case. Therefore, we reverse the decision of the court of appeals on the admissibility of the plea agreement and hold that admission of the terms of a plea agreement, not offered for or against the declarant and absent any improper vouching by the state, is not error.

■ Next we consider Folkers' sufficiency of the evidence claim. On this issue, our role is limited to "considering the evidence and determining whether the jury could reasonably find the accused guilty of [the crime charged]. We must view the evidence in the light most favorable to the [s]tate and must assume that the jury believed the [s]tate's witnesses and disbelieved everything which contradicted their testimony." *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980) (citation omitted).

■ Folkers asserts that because the only direct evidence of his guilt—Ploog's testimony—was "rendered useless based on a thorough and effective impeachment," the jury improperly convicted him on the basis of purely circumstantial evidence.[5]

■ We reject the premise of Folkers' argument, specifically, that Ploog's testimony was, as a matter of law, unworthy of credit by the jury.[6] Moreover, there was substan-

3. *See, e.g., United States v. Necoechea*, 986 F.2d 1273, 1280 (9th Cir.1993); *United States v. Bowie*, 892 F.2d 1494, 1498–99 (10th Cir.1990); *United States v. Drews*, 877 F.2d 10, 12 (8th Cir.1989); *United States v. Edelman*, 873 F.2d 791, 795 (5th Cir.1989).

4. Minn. R. Evid. 106 states the following: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any part of any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Because the defense "opened the door" by questioning a witness about Ploog's plea agreement, there is authority which suggests that the prosecution should be allowed to introduce the whole agreement into evidence regardless of its general admissibility. *See State v. DeZeler*, 230 Minn. 39, 44–45, 41 N.W.2d 313, 317–18 (Minn.1950) (finding a death certificate admissible as evidence although it would otherwise be inadmissible but for the opposing party opening the door by initiating questioning which cast doubt upon the qualification of the coroner). However, in the instant case, the defense deci-

sion to inquire as to the terms of the plea agreement does not go to the vouching issue, only to the introduction of the document itself, and so we do not rely on this doctrine to resolve this issue.

5. Folkers also asserts that the court of appeals applied an incorrect standard of review when deciding this issue and did not consider all of the facts of the case. Although we identify no error in the court of appeals' analysis of this issue, we note that, as always in considering a claim of insufficiency of the evidence, we independently reviewed the record in reaching our conclusion that the evidence was sufficient. Thus, any alleged error by the court of appeals on this issue is irrelevant.

6. Even if Folkers were correct that the jury had before it only circumstantial evidence of his guilt, his claim would fail. Circumstantial evidence alone may be sufficient to uphold a conviction, "when the reasonable inferences from the circumstantial evidence are consistent with the defendant's guilt and inconsistent with any rational

tial additional evidence, some direct and some circumstantial, that substantially corroborated Ploog's testimony. The jury heard that: (1) Folkers had a troubled relationship with the victim, which often resulted in violence; (2) Folkers had an argument with the victim moments before she was shot; (3) the victim was shot with Folkers' gun; (4) there was substantial physical evidence of the murder in Folkers' garage; (5) Folkers attempted to persuade Ploog to lie to the police about Srozinski's presence in the garage; (6) Folkers did not report the murder; and (7) there was conclusive physical evidence that someone attempted to conceal the murder by cleaning Folkers' garage and disposing of the body, the gun and the van.

■ The jury was able to hear both Ploog's and Folkers' versions of what happened, along with all of the other testimony. "[W]eighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980). Here, the jury determined that Ploog's version was the most credible and other evidence also supports the conclusion that Folkers committed the murder. The jury could have reasonably found, based on the evidence presented, that Folkers was guilty of the murder. Therefore, we hold that the evidence in this case is sufficient to support Folkers' conviction of second-degree murder.

■ Finally, Folkers argues that the trial court's stated grounds were insufficient to support its upward departure in sentencing Folkers to 360 months, rather than the presumptive sentence of 306 months. The trial court has discretion to depart from a presumptive sentence only if aggravating or mitigating circumstances are present. *State v. Best,* 449 N.W.2d 426, 427 (Minn.1989).

■ In this case, the trial court provided the following reasons for its upward departure: (1) that Folkers treated the victim with particular cruelty in that he attempted to conceal her body; (2) that Folkers had an entire lack of remorse; and (3) that Folkers tried to blame the murder on someone else.

These reasons are sufficient to grant an upward departure and are warranted by the facts of this case. *See State v. Ming Sen Shiue,* 326 N.W.2d 648, 655 (Minn.1982) (concealment of the victim's body shows particular cruelty and is an appropriate aggravating circumstance justifying departure); *State v. McGee,* 347 N.W.2d 802, 806 n. 1 (Minn.1984) (generally, lack of remorse not a factor, but in some cases may be considered as evidence of cruelty or seriousness of the conduct); *State v. Chaklos,* 528 N.W.2d 225, 228 (Minn. 1995) (trying to blame someone else for the offense charged is appropriate consideration for upward departure). A finding that the victim was treated with particular cruelty alone would be enough to justify the departure because that factor is specifically included as an aggravating factor justifying an upward departure in the Minnesota Sentencing Guidelines. *See* Minnesota Sentencing Guidelines II.D.2.b(2); *see also State v. Smith,* 541 N.W.2d 584, 589–90 (Minn.1996) (particular cruelty as the sole basis used in justifying upward departure).

While the facts of this case are not necessarily as egregious as some of the prior murder cases in which an upward departure has been granted, there are adequate grounds to support the trial court's determination to depart.

In conclusion, the trial court did not abuse its discretion by admitting into evidence the letter describing Ploog's plea bargain and agreement to testify truthfully or by granting the upward departure and sentencing Folkers to 360 months. Further, the evidence is sufficient to support Folkers' conviction of second-degree murder. Accordingly, the conviction is affirmed.

Affirmed as modified.

hypothesis except that of his guilt." *State v. Langley,* 354 N.W.2d 389, 396 (Minn.1984). Viewing the evidence in the light most favorable to the prosecution, in this case the weight of the circumstantial evidence is inconsistent with any rational hypothesis except that of Folkers' guilt.