**In the Matter of the Welfare of A.A.M., Child.**

No. A03–1793.

Court of Appeals of Minnesota.

Aug. 17, 2004.

John M. Stuart, State Public Defender, Leslie J. Rosenberg, Assistant Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Raymond F. Schmitz, Olmsted County Attorney, Karen A. Arthurs, Assistant County Attorney, Rochester, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; HARTEN, Judge; and HALBROOKS, Judge.

## OPINION

MINGE, Judge.

On appeal from an adjudication of delinquency, appellant juvenile argues that there was insufficient evidence to support the adjudication because the state failed to prove lack of consent, as would be understood by a reasonable juvenile. Because there is sufficient evidence in the record to support appellant's adjudication and because we find no authority requiring the district court to apply a "reasonable juvenile standard" to the element of consent for criminal sexual conduct, we affirm.

## FACTS

On May 8, 2003, appellant, the complainant, the complainant's boyfriend, and another teen were driving around the city of Rochester when one of the passengers suggested that the complainant "flash," by lifting up her shirt and exposing her breasts to the boys in the car and to individuals in passing cars. Appellant and the complainant's boyfriend were in the back seat; the complainant was directly in front of appellant. Appellant and complainant were both 14 years old at the time.

The complainant was wearing a large jersey, with a tube top and bra underneath. According to the complainant's testimony, appellant unhooked her bra, and grabbed and pinched her breasts by reaching around the front seat. The complainant stated that "[h]e just ... started touching me, and then it got worse." At various times, both the complainant and her boyfriend told appellant to stop touching her.

Rochester Police Officer Jeffrey Sobczak was urged by another minor to check the vehicle in which the complainant was riding to make sure the complainant was "okay." After another officer stopped that

vehicle, Officer Sobczak approached the scene and spoke with the complainant. Officer Sobczak testified that the complainant was crying and shaking, and she told him that appellant had unhooked her bra and grabbed her breasts. Officer Sobczak found the complainant's bra in the backseat of the vehicle.

On May 9, 2003, a three-count delinquency petition was filed, and following a two-day hearing, the district court found that appellant had committed criminal sexual conduct in the fifth degree in violation of Minn.Stat. § 609.3451, subds. 1(1), 2 (2002). A pre-dispositional report was prepared, and appellant was adjudicated delinquent on October 23, 2003.

## ISSUE

Was there sufficient evidence to prove that appellant's conduct was nonconsensual?

## ANALYSIS

On appeal from a delinquency-petition determination concluding that each of the elements have been proved beyond a reasonable doubt, "an appellate court is limited to ascertaining whether, given the facts and legitimate inferences, a factfinder could reasonably make that determination. *In re Welfare of S.M.J.*, 556 N.W.2d 4, 6 (Minn.App.1996) (citing *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978)). It is the exclusive role of the factfinder to determine the weight and credibility of witness testimony. *State v. Folkers*, 581 N.W.2d 321, 327 (Minn.1998). "We are required to view the record in the light most favorable to the determination and assume that the factfinder believed the testimony supporting the determination and disbelieved any contrary evidence." *S.M.J.*, 556 N.W.2d at 6.

Criminal sexual conduct in the fifth degree is committed if a "person engages in nonconsensual sexual contact." Minn.Stat. § 609.3451, subd. 1(1). Appellant argues that there was not sufficient evidence to prove that the complainant did not consent. Appellant contends that the state should be required to prove that a complainant has communicated refusal in such terms that a reasonable juvenile would understand that no consent existed. Appellant argues that a reasonable juvenile here would not have understood that the complainant did not consent because evidence exists that the complainant was laughing and flashing at times.

Courts have most commonly utilized a reasonable juvenile standard in two particular criminal situations: First, in the context of custodial interrogations, courts have asked whether, given the circumstances, a reasonable juvenile would have believed that he was not at liberty to terminate an interrogation and leave. *See Alvarado v. Hickman*, 316 F.3d 841, 848 (9th Cir.2002); *Ramirez v. State*, 739 So.2d 568, 574 (Fla.1999); *State v. Jason L.*, 129 N.M. 119, 2 P.3d 856, 862 (2000); *State ex rel. Juvenile Dep't v. Loredo*, 125 Or.App. 390, 865 P.2d 1312, 1315 (1993); *In re D.A.R.*, 73 S.W.3d 505, 510–11 (Tex.App. 2002).

Second, courts have used a reasonable juvenile standard when determining whether a juvenile's conduct was criminally reckless or negligent. *See In re Welfare of S.W.T.*, 277 N.W.2d 507, 514 (Minn. 1979) ("[I]n juvenile delinquency proceedings, the question of culpable negligence must be decided with reference to the conduct and appreciation of risk reasonably to be expected from an ordinary and reasonably prudent juvenile of a similar age."); *see also J.R. v. State*, 62 P.3d 114, 119 (Alaska Ct.App.2003) (determining that to sustain a charge of murder in the second degree, the question of whether a juvenile defendant displayed a reckless

disregard for life must be judged by whether his conduct conformed to that of reasonable juvenile); *In re William G.,* 192 Ariz. 208, 963 P.2d 287, 293 (1997) (holding that a juvenile should be judged by a standard of 15–year–olds of like intelligence and experience in an adjudication of delinquency). However, there exists no caselaw or statutory authority in Minnesota to support appellant's proposition that a reasonable juvenile standard should apply to the element of consent in a criminal-sexual-conduct case, and we reject such an assertion.

Sexual contact is considered to be consensual when "a person's words or overt actions ... indicate a freely given present agreement to perform a particular sexual act with [another]." 10 *Minnesota Practice,* CRIMJIG 12.52 (1999). Here, we find no evidence in the record that the complainant indicated in any way that she agreed to appellant grabbing her breasts. Instead, the complainant testified that appellant grabbed her more than five times, that the grabbing hurt, and that she told appellant to stop "more than three times." The complainant explained that she leaned forward in her seat to prevent appellant from grabbing her. The complainant also testified that she did not want appellant touching her breasts, that she did not consent to his doing so, and that she did not encourage his actions in any way.

Appellant also argues that the district court failed to recognize that complainant was sending mixed messages; that she signaled consent by pulling up her shirt and laughing and that this justified his belief that she was not serious when she told appellant to stop. Minnesota law, however, does not specify how rejection is communicated. The supreme court has interpreted nonconsent to mean a situation in which a complainant has been physically attacked or has emerged from the incident so shaken or traumatized that no reasonable person would believe the complainant desired that particular sexual contact. *See State v. DeBaere,* 356 N.W.2d 301, 304 (Minn.1984) (finding that injury to complainant was proof of her nonconsent). "Flashing" may be wild behavior; yet it is not consent to harsh grabbing of a girl's breasts.

■ Here, the state introduced photographic evidence of the injuries to the complainant's breasts. The district court found the photographs corroborated the conduct that the complainant described and concluded that "[t]he marks and bruises indicate a degree of conduct that is criminal rather than simply offensive and inappropriate under the circumstances." The record reflects and the photographs show that the complainant's breasts had bruises and red marks. The complainant testified that the marks shown in the photographs were the result of appellant "grabbing me and pinching me" and that appellant's contact with her breasts "hurt." The district court specifically found the complainant's testimony to be credible and consistent.

## DECISION

Viewing the evidence in the light most favorable to the state, and giving due regard to the district court's ability to weigh the credibility of the evidence, we find ample evidence to support the district court's determination that appellant engaged in nonconsensual sexual contact with the complainant.

**Affirmed.**