WRIGHT, Justice
(dissenting).
“Hard cases should not be allowed to make bad law.” Young v. City of Mankato, 97 Minn. 4, 8, 105 N.W. 969, 971 (1905) (internal quotation marks omitted). The anguish experienced by the Rush family is heartbreaking and,, therefore, the temptation to adopt a rule of law that might provide some solace is powerful. Nevertheless, we must not sacrifice important legal principles in the pursuit of such a rule. By affirming the district court’s de-1 parture from the Minnesota Sentencing Guidelines, the court not only undermines the principles of uniformity, proportionality, rationality, and predictability that form the foundation of our sentencing law, the court also fails to abide by the doctrine of stare decisis. For these reasons, I conclude that the law compels a sentence no greater than' the upper limit of the presumptive guideline range. Therefore, I respectfully dissent.
The question presented in this case is whether a district court may depart from the presumptive sentence for a second-degree murder conviction based solely on the defendant’s uncharged offense of concealment of the victim’s body. The majority answers this question in the affirmative by: (1) determining that the murder and concealment were part of the same behavioral incident; (2) concluding that the murder was committed in a particularly serious way because, after committing the murder, Hicks concealed the victim’s body, which caused additional trauma to the victim’s family and friends; and (3) overruling State v. Schmit, 329 N.W.2d 56, 58 n. 1 (Minn.1983) (holding that concealment of the murder victim’s body did not operate as an aggravating factor in sentencing be *164 cause the defendant made no effort to bargain with information concerning the location of the body). Each rationale that the majority offers reflects an abandonment of important and well-established legal principles. My analysis begins with a summary of the principles underlying our sentencing law and proceeds to an examination of each rationale offered by the majority.
I.
In Minnesota, we “protect the individual against the misuse of the criminal law by ... authorizing sentences reasonably related to the conduct and character of the "convicted person.” Minn.Stat. § 609.01, subd. 1(2) (2014). Moreover, the overarching principles in all sentencings are “rationality, predictability, and consistency.” State v. Misquadace, 644 N.W.2d 65, 71 (Minn.2002). The Minnesota Sentencing Guidelines embody the “state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing.” Minn.Stat. § 244.09, subd. 5 (2014); see Taylor v. State, 670 N.W.2d 584, 586 (Minn.2003). The sentencing guidelines ensure that ‘“sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender’s criminal history.’ ” Tucker v. State, 799 N.W.2d 583, 586 (Minn.2011) (emphasis added) (quoting Minn. Sent. Guidelines I (2010)). To promote uniformity and proportionality in sentencing, “ ‘departures from the presumptive guidelines sentence are discouraged.’ ” Id. (quoting State v. Jackson, 749 N.W.2d 353, 357 (Minn.2008)). Put differently, the factors justifying departures “are intended to describe specific situations involving a small number of cases.” Minn. Sent. Guidelines cmt. 2.D.301. The Minnesota Sentencing Guidelines Commission expressly “rejects factors that are general in nature, and that could apply to large numbers of cases.” Id. With these important sentencing principles as my lodestar, I consider each rationale that the majority offers.
II.
The majority contends that the murder and concealment of Rush’s body were part of a single behavioral incident and, therefore, the prohibition against using facts underlying a separate, uncharged offense is not implicated in this case. See State v. Edwards, 774 N.W.2d 596, 602 (Minn.2009) (explaining that a sentencing departure may not be based on a separate, uncharged offense). I disagree. The concealment of Rush’s body is a separate, uncharged violation of Minn.Stat. § 609.502, subd. 1 (2014), and those facts that underlie the concealment cannot be used to enhance the murder sentence.
When determining whether crimes are committed as part of a single behavioral incident, courts consider whether there is a “single criminal objective” and a “unity of time and place.” State v. Bookwalter, 541 N.W.2d 290, 294-95 (Minn.1995); State v. Johnson, 273 Minn. 394, 404-05, 141 N.W.2d 517, 525 (1966) (describing the factors as time, place, and an effort to obtain a single criminal objective). The application of this test depends heavily on the facts and circumstances of the particular case. State v. Bauer, 792 N.W.2d 825, 828 (Minn.2011). For example, under the avoidance-of-apprehension doctrine, when a defendant commits a substantially contemporaneous second offense to avoid apprehension for the first offense, we have held that the offenses are part of the same behavioral incident. See State v. Gibson, 478 N.W.2d 496, 497 (Minn.1991) (concluding that the offenses of criminal vehicular operation and leaving the scene of an accident arose from the same behavioral incident). When a second offense is commit *165 ted 5 hours after the first offense, “in all likelihood we \yould not consider it to have been committed ‘substantially contemporaneously’ with the first offense.” Bookwalter, 541 N.W.2d at 297. Moreover, when the avoidance-of-apprehension offense is not committed as part of a prearranged scheme, but instead is committed at a different time and place as an “afterthought,” we have concluded that the two crimes do not arise from a single behavioral incident.[1] See id. at 296 (holding that the initial criminal sexual assault and the subsequent decision to kill the victim to avoid apprehension were not part of a single behavioral incident); see also State v. Leja, 684 N.W.2d 442, 451 (Minn.2004) (Anderson, Russell, J., concurring specially) (concluding that the concealment of the victim’s body was not part of the same behavioral incident as the murder).
Applying the single-behavioral-incident test to the particular facts and circumstances of Hicks’s case, I conclude that the offenses of second-degree unintentional murder and concealment of Rush’s body did not arise from a single behavioral incident. The State established that Hicks inflicted blunt-force trauma to Rush’s skull, which caused her death. But because the State failed to establish that Hicks intended to cause Rush’s death, Hicks was acquitted of second-degree intentional murder. According to the facts established at trial, Hicks did not intend to kill Rush — her murder was unintentional. Hicks then went into the living room and only then began to devise a plan to conceal Rush’s body. He eventually decided to hide Rush’s body in Brooklyn Park in the middle of the night. Later that night, Hicks placed the body into the trunk of his. car and transported the body from Columbia Heights to a remote location in Brooklyn Park, where he buried and concealed it. On these facts, it necessarily follows that the concealment of Rush’s body was not part of a prearranged program of events when Hicks struck Rush with the blunt instrument.[2] The concealment was committed as an “afterthought.” Moreover, several hours passed before Hicks transported Rush’s body to Brooklyn Park and therefore the concealment was not committed “substantially contemporaneously” with the murder. Instead, the concealment was committed at a different time and place. Because no principled *166 distinction can be drawn between the facts of this case and those in Bookwalter, the circumstances here compel the conclusion that the offenses of second-degree unintentional murder and the concealment of Rush’s body are not part of a single behavioral incident.
Since the concealment of Rush’s body constitutes a separate, uncharged offense, I next consider whether the district court erred by imposing an upward sentencing departure based on the facts underlying the concealment of Rush’s body. In Edwards, we reaffirmed the rule that the facts underlying a separate, uncharged offense may not be used to support an upward sentencing departure. 774 N.W.2d at 602 (citing State v. Ott, 341 N.W.2d 883, 884 (Minn.1984)). In explaining the rationale for the rule, we said that the facts underlying a separate, uncharged offense “do not show that the offense being sentenced was committed in a particularly serious way.” Id. Moreover, we have repeatedly said that it is “unfair” to enhance a sentence based on facts underlying a separate, uncharged offense. See, e.g., Leja, 684 N.W.2d at 452 (Anderson, Russell, J., concurring specially) (explaining that durational departures should not be based on evidence of an offense never charged); State v. Brusven, 327 N.W.2d 591, 593 (Minn.1982) (explaining that the district court’s reliance on evidence that the defendant committed separate acts of sexual misconduct with other children was unfair); State v. Barnes, 313 N.W.2d 1, 3 (Minn.1981) (“[I]t would be unfair to try to justify the departure on the basis of the police reports suggesting the defendant maybe could have been convicted of violent crimes in two other instances[.]”).
Applying the Edwards rule to the facts presented here, I conclude that the district court erred when it imposed an upward sentencing departure based on the facts underlying the uncharged concealment offense. To be clear, had the prosecutor charged Hicks and the jury convicted him of the separate offense of concealing Rush’s body, I would agree that the circumstances surrounding the concealment, including the victim impact statement provided by Rush’s daughter, demonstrate that the concealment was committed in a particularly serious way. Hicks did not merely interfere with the scene of death. He concealed Rush’s body, transported it to a remote location in another city, and then hid the body in a location where it remained for years. Indeed, the concealment of Rush’s body caused great anguish to Rush’s family. These circumstances of concealment, however, do not meet the legal standard for a sentencing departure, which requires that Hicks committed the second-degree murder in a particularly serious way.
By affirming the district court’s use of facts underlying the separate, uncharged concealment offense, the majority undermines the important sentencing principles of proportionality, uniformity, predictability, and rationality. When sentencing departures are based on separate, uncharged offenses, at least four unauthorized consequences can occur: (1) a defendant’s punishment may be disproportionate to the conduct underlying the offense of conviction; (2) defendants who commit the offense of conviction in an identical manner may receive different punishments; (3) the conduct underlying the offense of conviction is no longer a reliable predictor of punishment; and (4) the resulting sentencing scheme lacks rationality. The facts of this case, although heartbreaking, do not warrant an abandonment of the bedrock principles of proportionality, uniformity, predictability, and rationality in sentencing. I, therefore, respectfully dissent from the majority’s conclusion that the upward sentencing departure at issue here was *167 justified by the facts underlying the separate, uncharged offense of concealment of Rush’s body.
III.
The majority contends that the murder was committed in a particularly serious way because Hicks concealed the victim’s body, causing additional trauma to the victim’s family and friends. This expansion of the law is unprecedented and ill-advised.
The majority accurately states that we have affirmed sentencing departures based on the impact of the offense of conviction on bystanders who were “not technically victims of the crime.” State v. Profit, 323 N.W.2d 34, 36 (Minn.1982); see also Edwards, 774 N.W.2d at 607 (explaining that the defendant’s conduct was particularly serious because it exposed bystanders to injury or death); State v. Mitjans, 408 N.W.2d 824, 834 (Minn.1987) (same). However, the circumstances of these cases are distinguishable in a consequential way. In each of these cases the bystanders were present at the scene when the crime was committed.
In Profit, the defendant went to a daycare center and forced the woman in charge into a bathroom at knife point, where he then stole her rings and tried to kiss her. 323 N.W.2d at 35. When the daycare children started to make noise, he tied her up with her bra and sweater and walked her toward an outer door where he encountered a parent who was dropping off a child. Id. We concluded that, although the children present at the daycare center “were not technically victims of the crime,” committing the offense of conviction “in front of the children was a particularly outrageous act.” Id. at 36. This was especially true because the defendant “knew when he went to the center that there would be children present who would witness part of what he planned to do.” Id. We later clarified that the presence of children is an aggravating sentencing factor only when the children “saw, heard, or otherwise witnessed the offense.” State v. Vance, 765 N.W.2d 390, 394 (Minn.2009). The samé principle that bystanders must witness the offense or be present when the offense occurs should apply here to foreclose a sentencing departure.
In Edwards, the defendant “fired seven times at or toward a group of nine people in the immediate area, exposing all of them, to injury or death.... Defendant’s conduct was particularly serious and represented a greater than normal danger to the safety of other people.” 774 N.W.2d at 600. That the defendant placed bystanders at risk physically when he shot the victim in a public place made this offense particularly serious. Similarly, the defendant in Mitjans committed murder in a bar, where his shots placed the other patrons ■ in danger of physical harm. 408 N.W.2d at 834.
Profit, Edwards, and Mitjans are readily distinguishable from this case because Rush’s adult daughter was not physically present when the offense of conviction was committed. Consequently, the majority’s conclusion that a sentencing departure may be based on emotional harm to third parties who were not present at the scene is unprecedented. The majority cites State v. Ming Sen Shiue, 326 N.W.2d 648 (Minn.1982), for the proposition that the trauma caused to a victim’s family by the defendant’s concealment of a body may justify an aggravated sentencing departure. The majority’s reliance on Shiue is misplaced because Shiue is distinguishable in an important way. In Shiue, the defendant concealed the victim’s body and used the concern of the parents and authorities to bargain for an agreement to avoid prosecution for first-degree murder. 326 N.W.2d at 655. While we recognized that *168 the defendant’s actions caused trauma to the victim’s family, our analysis in Shine was driven by the public policy of discouraging “[o]ther accused persons” from using the disclosure of a body’s whereabouts “in negotiating a plea.”[3] Id. We later reaffirmed the importance of the public policy justification in Schmit when we concluded that, “[b]ecause defendant made no effort to bargain with information concerning the location of the body, his concealment of the body does not operate as an aggravating factor in sentencing.” 829 N.W.2d at 58 n. 1.
The majority’s determination that the facts of this case merit a departure also is ill-founded in light of the Minnesota Sentencing Guidelines. A departure based on harm to remote third parties is precisely the kind of departure against which the Minnesota Sentencing Guidelines caution. That Rush’s family suffered greatly because of Hicks’s actions is readily discerna-ble from the transcript. And no aspect of my legal analysis minimizes this terrible tragedy. However, if the suffering of individuals other than the victim justified the determination that a crime was more serious than a typical case, a departure similar to the one applied to Hicks’s sentence would apply in countless cases, contrary to the Minnesota Sentencing Guidelines Commission’s instructions. See Minn. Sent. Guidelines cmt. 2.D.301. Such a departure also violates the principles of “uniformity, proportionality, rationality, and predictability in sentencing.” Misquadace, 644 N.W.2d at 67 (quoting Minn.Stat. § 244.09, subd. 5 (2000)). If we conclude that this defendant’s offense is more serious because it traumatized family members, we also conclude, however inadvertently, that the murder of an individual without close family and community ties is a less serious offense. This distinction among victims of violent crimes not only is fundamentally unfair, but also defeats the principal purpose of the Minnesota Sentencing Guidelines and results in a sentencing regime that lacks uniformity, proportionality, and predictability. Moreover, a sentence resulting from this kind of departure also contradicts the Legislature’s directive to impose sentences that are connected to the offense conduct. The Legislature has stated that sentences should be reasonably related to the conduct of the convicted person. Minn.Stat. § 609.01, subd. 1(2). Similarly, the Minnesota Sentencing Guidelines Commission has said that “departures from the Guidelines should not be permitted for elements of alleged offender behavior not within the definition of the conviction offense.” ' Minn. Sent. Guidelines cmt. 2.D.208. Hicks was convicted of murder, not concealment. His conduct is the offense of murder, not the act of concealment. Therefore, the majority errs when it concludes that the concealment and resulting emotional trauma to the victim’s family and friends made the commission of the murder more serious and justifies an upward durational departure.
IV.
The majority overrules the holding in Schmit, which states: “Because defendant made no effort to bargain with information concerning the location of the body, his concealment of the body does not operate as an aggravating factor in sentencing.” *169 329 N.W.2d at 58 n. 1. In doing so, the analysis of the majority contravenes the doctrine of stare decisis because the analysis fails to articulate a compelling reason to overrule Schmit.
“The doctrine of stare decisis directs us to adhere to our former decisions in order to promote the stability of the law and the integrity of the judicial process.” Schuette v. City of Hutchinson, 843 N.W.2d 233, 238 (Minn.2014). Here, the majority disregards our extreme reluctance to overrule our precedent absent a compelling reason. State v. Martin, 773 N.W.2d 89, 98 (Minn.2009).
The issue presented in this case— whether concealment of a body, without an effort to bargain with information concerning the location of the body, constitutes an aggravating sentencing factor — was squarely addressed in Schmit, 329 N.W.2d at 58 n. 1. In Schmit, we expressly ruled that, “[bjecause defendant made no effort to bargain with information concerning the location of the body, his concealment of the body does not operate as an aggravating factor in sentencing.” Id. When the State asked us to treat our ruling in Leja as dicta, 684 N.W.2d at 442, four members of the court rejected the State’s argument that concealment of the body should, by itself, be an aggravating factor sufficient to justify an upward durational departure. Justice • Paul Anderson’s opinion, which was joined by Justice Page and Justice Hanson, rejected the argument outright, stating that “Leja’s participation in the concealment of [the victim’s] remains, without more such as her bargaining with the authorities, does not support an upward durational departure.” Id. at 450. Justice Russell Anderson concurred specially. He did not reach the issue of whether concealment, by itself, was an aggravating factor sufficient to justify an upward durational departure because he concluded that the concealment was part of a separate behavioral incident, and consequently, the concealment did not support a departure from the presumptive sentence for murder. Id. at 451 (Anderson, Russell, J., concurring specially). Chief Justice Blatz’s dissent, which was joined by Justices Gilbert and Meyer, concluded that the concealment was part of .the same behavioral incident and that the concealment alone is an aggravating factor sufficient to justify an upward durational departure. Id. at 455-57 (Blatz, C.J., dissenting).
The State now asks us, for the second time in 10 years, to view our ruling in Schmit as dicta. This, time the majority grants the State’s request, adopting the analysis of the Leja dissent.[4] Just like the Leja dissent, the majority relies on State v. Folkers, 581 N.W.2d 321 (Minn.1998), and State v. Griller, 583 N.W.2d 736 (Minn.1998).
In Folkers, we suggested that concealment of a- body was an appropriate aggravating factor because it showed particular cruelty. 581 N.W.2d at 327 (citing Shiue, 326 N.W.2d at 655). But the majority’s rationale for relying on Folkers is *170 faulty. While we concluded in Folkers that concealing a body fell within the particular-cruelty aggravating factor,.we did not reach the issue subsequently presented and decided in Schmit — whether concealment of a body, without an effort to bargain with information concerning the location of the body, was a separate aggravating sentencing factor.
In Chiller, the district court articulated “several reasons for departing from the presumptive sentence: the concealment of [the •victimjs body, the particular cruelty Griller used in killing [the victim], and Griller’s ‘chilling lack of remorse’ and ‘persistent attempts to deny responsibility and shift blame.’ ” 588 N.W.2d at 744 (emphasis added). In affirming the upward departure, we summarily endorsed the district court’s reasons, stating: “The Minnesota Sentencing Guidelines and precedent support the use of these factors to impose an upward departure.” Id. (emphasis added). We placed-the authority for our endorsement in a footnote that reads:
See Minnesota Sentencing Guidelines II. D.2.b (aggravating factors); State v. Folkers, 581 N.W.2d 321 (Minn.1998) (concealment of body, remorse, and attempt to shift blame); [Rairdon v. State, 557 N.W.2d 318, 327 (Minn.1996) ] (particular cruelty); State v. Ming Sen Shine, 326 N.W.2d 648, 655 (Minn.1982) (concealment of body).
Id. at 744 n. 29. Admittedly, at first glance, the parenthetical descriptions of Folkers and Shine in the Chiller footnote could be read as suggesting that concealment of a body is by itself an aggravated sentencing factor. However, when one reads the decisions in Folkers and Shine, it is abundantly clear that we did not hold that concealment is by itself an aggravated sentencing factor. Consequently, the majority’s reliance on Chiller also is misplaced.
In sum, the majority has not articulated a compelling reason to overrule Schmit because our reasoning in Folkers and Chiller is consistent with Schmit. Moreover, the only change since the court rejected the dissent’s analysis in Leja is the composition of the court. In the absence of a compelling reason, the majority’s decision to overrule Schmit contravenes the doctrine of stare decisis. By ignoring the doctrine of stare decisis, the majority destabilizes the law and calls into question the integrity of the judicial process. For these reasons, I decline to join in the majority’s decision to overrule Schmit.
V.
The majority’s decision upholds a sentencing departure based on a separate, uncharged offense, imprudently concludes that concealment of a murder victim’s body may serve as the sole basis for an upward durational departure, forsakes the doctrine of stare decisis, and overrules our precedent in Schmit. By doing so, the majority abandons the fundamental principles of sentencing — uniformity, proportionality, rationality, and predictability. Therefore, I respectfully dissent.

. The majority contends our decision in Book-waiter does not discuss the need for a prearranged scheme in the context of the avoidance-of-apprehension doctrine. I respectfully disagree. Although we initially discussed the need for a prearranged scheme in the context of whether the offenses were part of one behavioral incident, we later incorporated that discussion into our analysis of Bookwalter’s avoidance-of-apprehension claim. Bookwalter, 541 N.W.2d at 296-97. More specifically, in rejecting Bookwalter’s avoidance-of-apprehension claim, we explicitly relied on the "factors that formed the basis of our conclusion that the sexual assault and attempted murder were not one behavioral incident.” Id. at 297. Our avoidance-of-apprehension analysis was not limited to "the multiplicity and disjointed nature of events,” but instead included a discussion of the district court’s finding that Bookwalter’s motivation for the attempted mürder never became clear. Id. In other words, our analysis considered not only the time and place, but also the singleness of purpose that is found in a prearranged scheme.

. Ample evidentiary support for this conclusion was presented in the trial testimony of a fellow inmate at the Anoka County Jail in whom Hicks confided. When describing the murder and subsequent concealment to the inmate, Hicks said that after he killed Rush, he "went out to the living room, kept drinking, and ... had to come up with a plan to get rid of her body.” He considered a number of plans, including disposing of the body in the Mississippi River. After "some hours,” he placed her body in a hockey bag, transported it to a field in the trunk of his car, and hid it.

. Our analysis in State v. Elkins was driven by another unique public policy concern — discouraging "the reprehensible scheme of trying to pin the blame on a completely innocent man.” 346 N.W.2d 116, 119 (Minn.1984). Moreover, Elkins involved multiple aggravating sentencing factors. Id. Consequently, El-kins does not support the majority's conclusion that a sentencing departure may be based solely on emotional harm to third parties who were not present at the scene of the crime.

. The majority argues that its analysis does not implicate the doctrine of stare decisis because the special concurrence in Leja did not reach the issue of whether concealment of a body by itself is an aggravating factor. Such an argument fails ,to acknowledge that the majority’s conclusion, that Hicks’s act of concealment by itself may be an aggravating factor, is necessarily predicated on a conclusion that the concealment was part of the same behavioral incident. Therefore, the majority’s argument requires not only a rejection of Justice Paul Anderson’s opinion in Leja, but also a rejection of Justice Russell Anderson’s special concurrence in Leja, which concluded that the concealment was not part of the same behavioral incident. In my view, the majority’s analysis, which requires a rejection of the reasoning of four members of the court, implicates the doctrine of stare decisis.